Argued and submitted April 11, 2019, at Portland Community College, Portland; affirmed April 1; petition for review denied July 30, 2020 (366 Or 760)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY GORDON BROWN,
*Defendant-Appellant.*

Clackamas County Circuit Court
16CR55341; A165124

463 P3d 526

Defendant appeals from a judgment of conviction for six counts of second-degree burglary. Defendant assigns error to the trial court's admission of evidence relating to a seventh burglary that defendant admitted committing that was not charged in this case. The court admitted that evidence under OEC 404(3) for the purpose of proving defendant's identity in the six charged burglaries. Defendant argues that the court erred in admitting the evidence, because, although the state presented a number of similarities between the uncharged and charged burglaries, the similarities were not sufficiently distinctive to admit as proof that all seven crimes were committed by the same person. *Held*: The trial court did not err in admitting evidence of the uncharged burglary under OEC 404(3) as proof of defendant's identity in connection with the six charged burglaries. There is a rational inference of distinctiveness based on the unlikely combination of several items of clothing and an accessory worn by the suspect during the highly similar series of burglaries.

Affirmed.

Jeffrey S. Jones, Judge.

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Lagesen, Judge, and Shorr, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

Defendant appeals from a judgment of conviction for six counts of second-degree burglary, ORS 164.215. Defendant assigns error to the trial court's admission of evidence relating to a seventh burglary that defendant admitted committing that was not charged in this case. The court admitted that evidence under OEC 404(3) for the purpose of proving defendant's identity in the six charged burglaries. Defendant argues that the court erred in admitting the evidence, because, although the state presented a number of similarities between the uncharged and charged burglaries, the similarities were not sufficiently "distinctive" to prove that all seven crimes were committed by the same person. Thus, defendant asserts, the evidence of the seventh uncharged burglary was not properly admissible to prove defendant's identity in the six charged burglaries under OEC 404(3). For the reasons stated below, we conclude that the trial court did not err in ruling that the evidence was admissible under OEC 404(3). Accordingly, we affirm.

"We review a trial court's decision to admit other-acts evidence in light of the record before the trial court at the time of its decision." *State v. Morrow*, 299 Or App 31, 33, 448 P3d 1176 (2019). In this case, the trial court initially ruled on the admissibility of the evidence at a pretrial hearing; however, defendant assigns error not to that ruling but to the court's subsequent admission of the evidence at trial. Therefore, we consider the evidence presented both at the pretrial hearing and at trial.

In the early morning hours of March 16, 2015, police were dispatched to a burglary in progress at the Coffee Rush café in Oregon City. Police found defendant lying on an embankment near the café and arrested him. A mask and a pry bar were located on the embankment near where defendant was discovered, and gloves were found on defendant. Defendant was wearing a black leather jacket, a blue and white "checkered pattern" hooded sweatshirt (hoodie), and a chain attached to his wallet. Defendant admitted to police that he had committed the Coffee Rush burglary because he was homeless and that he just got "desperate." Defendant admitted to using a "pry bar" to force open the door to the

café and to stealing money from the "till." Without going into detail, defendant suggested that he had committed other burglaries and that his "method of entry" was to use a pry bar to gain entry and that "some doors are kind of rough." Defendant ultimately pleaded guilty to the Coffee Rush burglary.

After defendant was arrested for the Coffee Rush burglary, he was charged in this case for six other burglaries that had been committed in Lake Oswego and Oregon City within a few months before the Coffee Rush burglary. The first three burglaries occurred on December 12, 2014, at three restaurants on South State Street in Lake Oswego: Go Fish Go Sushi, Laughing Planet Café, and Pizza Schmizza (Counts 1, 2, and 3, respectively). The trial court found that those three restaurants were within a block of each other. The next two burglaries occurred during the late-night, early-morning hours between December 15 and 16, 2014, at two restaurants on Beavercreek Road in Oregon City: Casa Ixtapa and Jimmy Johns (Counts 4 and 5, respectively). The state presented evidence that those two burglaries were within the same shopping center. The sixth burglary occurred on March 1, 2015, at the Highland Still House Pub in Oregon City. The state presented evidence that all of the burglaries, including the Coffee Rush burglary, occurred within approximately eight miles of each other. In each of the six charged burglaries, the suspect had used a pry bar to force open the door and had stolen money from the cash register. Surveillance video showed that the suspect wore a black jacket, a blue plaid hoodie, and a wallet chain, and carried a pry bar.[1]

Defendant waived his right to a jury trial, and his case was tried to the court. Before trial, the state filed a "notice of intent to admit OEC 404 evidence." Specifically, the state sought to admit evidence of the Coffee Rush burglary

_____

[1] Surveillance video was procured from only three of the locations: Pizza Schmizza, Jimmy Johns, and the Highland Still House Pub. The state asked the court to infer, based on the close geographic and temporal proximity of the first two clusters of burglaries, that the same person who committed the Pizza Schmizza burglary committed the Laughing Planet and Go Fish Go Sushi burglaries (Counts 1 to 3), and that the Jimmy Johns burglary was committed by the same person as the Casa Ixtapa burglary (Counts 4 and 5). The trial court so inferred, and defendant does not challenge that finding on appeal.

to prove defendant's identity. In its notice and memorandum, the state asserted that the distinctive clothing worn by defendant when he was arrested for the Coffee Rush burglary—a black jacket over a blue plaid hoodie, gloves, a mask, and a wallet chain—was nearly identical to the clothing worn by the suspect in surveillance video from the charged burglaries. Additionally, the state asserted that defendant's method of entry at Coffee Rush with a pry bar was identical to that of the person who committed the charged burglaries. The state noted additional similarities between the Coffee Rush burglary and the six charged burglaries, including that (1) each was committed against a small, local restaurant; (2) at each location, the burglar targeted the cash register; (3) each burglary occurred late at night; (4) the burglar carried the same tools to each—a pry bar and a screwdriver; and (5) each burglary occurred in close proximity to the others.

In response, defendant filed a motion to exclude evidence of the Coffee Rush burglary, and a pretrial hearing was held on the issue. At the pretrial hearing, the state reiterated the arguments in its notice and memorandum regarding the similarities between the Coffee Rush burglary and the six charged burglaries and that the evidence was relevant to prove that defendant was the person who had committed the charged crimes. Defendant argued that the similarities between the seven burglaries were not distinctive enough to be evidence of identity under OEC 404(3). In defendant's view, the fact that a burglary was committed at a commercial establishment at night by forced entry of a locked door was not distinctive, nor was the targeting of the cash registers because it was where "someone entering that business in that fashion *** would look." Defendant also argued that the time span between the crimes of nearly three months and the fact that they took place in three different cities showed that they were not distinctive. Defendant did not address the similarity between the clothing he was wearing when he was arrested for the Coffee Rush burglary and that of the suspect in the surveillance videos.

The trial court ruled at the pretrial hearing that evidence of the Coffee Rush burglary was admissible for

the limited purpose of proving identity under OEC 404(3). The court ruled that the clothing and other circumstances surrounding all seven burglaries were distinctive enough to allow evidence of the Coffee Rush burglary to be admitted for the purpose of proving identity as to the six charged burglaries. Additionally, the court conducted an OEC 403 balancing test and determined that the need for the evidence outweighed any risk of undue prejudice.[2]

At trial, evidence of the Coffee Rush burglary was admitted. That evidence included photographs of defendant at the time he was arrested, the mask and pry bar that were found nearby, and defendant's black leather jacket and hoodie; testimony of officers who were present when defendant was arrested; and audio recordings of conversations between detectives and defendant immediately after he was arrested on March 16, 2015. Defendant objected to the evidence on the same basis that "we dealt with this morning," *i.e.*, that the Coffee Rush burglary was not similar enough to the charged crimes for evidence of that burglary to be admitted as other-acts evidence for proving identity under OEC 404(3). The trial court admitted the evidence over defendant's objection.

The trial court found defendant guilty on all counts. The court first found that the same suspect committed the three burglaries on December 12, 2014, and the two burglaries on December 15 and 16, 2014, based on the geographic proximity and "mechanism of entry." The court also found that the blue plaid hoodie was so distinctive as to rise to the level of a "mark of Zorro." *State v. Pinnell*, 311 Or 98, 110 n 18, 806 P2d 110 (1991). The court stated that it found defendant guilty "without reference to a conviction on the Coffee Rush burglary" because of the distinctiveness of the blue plaid hoodie and his statement to police that his "M. O." was to use a pry bar.

Defendant now appeals, assigning error to the trial court's admission of the evidence related to the Coffee Rush burglary. Defendant argues, as he did to the trial court, that, although there were some similarities between the Coffee

---

[2] On appeal, defendant does not challenge the trial court's conclusion regarding OEC 403 balancing.

Rush burglary and the charged crimes, "there was no signature element that is so distinctive" that it earmarks the crimes as the handiwork of defendant. Accordingly, defendant argues, the evidence should not have been admitted. "We review a trial court's ruling admitting evidence of other acts as relevant to a nonpropensity purpose contemplated by OEC 404(3) for errors of law, and in light of the record that was before the court at the time it made its decision." *State v. Jones*, 285 Or App 680, 682, 397 P3d 595 (2017) (internal citations omitted).

As a general rule, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(3).[3] In the context of OEC 404(3), "'character' refers to disposition or propensity to commit certain crimes, wrongs or acts." *State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986). Under OEC 404(3), such other-acts evidence is not admissible to prove that a person acted in conformity with his or her character, not because "character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Morrow*, 299 Or App at 41 (citing *Michelson v. United States*, 335 US 469, 475-76, 69 S Ct 213, 93 L Ed 168 (1948)).

Other-acts evidence, however, is admissible for nonpropensity purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OEC 404(3). In other words, a prosecutor is generally prohibited from introducing other-acts evidence, "unless the evidence is introduced for some relevant purpose other than to suggest that, because the accused is a person of criminal character, he or she is more likely to have committed the charged crime." *Pinnell*, 311 Or at 103.

---

[3]  OEC 404(3) states:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

This case does not involve the admission of evidence under OEC 404(4).

One permissible purpose for admitting evidence of other crimes is to prove a defendant's identity when "a defendant operated in a novel or distinctive manner that identifies that defendant as the perpetrator." *State v. Pitt*, 352 Or 566, 576, 293 P3d 1002 (2012) (citing *State v. Johnson*, 313 Or 189, 196, 832 P2d 443 (1992)). Evidence admitted for that purpose is often referred to as identity or *modus operandi* evidence. To admit identity or *modus operandi* evidence,

> "[t]he prosecution must establish by a preponderance of the evidence that (1) there is a very high degree of similarity between the charged and uncharged crimes; and (2) the methodology is attributable to only one criminal, that is, the methodology is distinctive so as to earmark the acts as the handiwork of the accused."

*Pinnell*, 311 Or at 109-10; *see also Johnson*, 313 Or at 196 (identity evidence must show "a very high degree of similarity between the charged and uncharged crimes"); *Johns*, 301 Or at 551 ("[T]o prove identity the prior acts must be a 'signature' crime.").

As to the first requirement that the charged and uncharged crimes are highly similar, "three factors are relevant: (1) the time lapse between the two crimes; (2) the geographic distance between the two crimes; and (3) the resemblances between the methodologies of the two crimes." *Pinnell*, 311 Or at 110. Of those three factors, the third factor "is the most important consideration." *Id.*; *see also State v. Barnum*, 157 Or App 68, 74-75, 970 P2d 1214 (1998), *rev'd on other grounds*, 333 Or 297, 39 P3d 178 (2002) (noting that, in that case, time lapse and geographic distance between the two crimes were "of little importance" because those factors only tended to prove that the other-acts crime was committed by the defendant, and in that case the defendant had been convicted of the other crime).

As to the second requirement that the methodology is distinctive,

> "the prosecutor may attempt to establish the distinctiveness or unusual characteristics of the modus by listing all the points of similarity between the two crimes. As a general proposition, the greater the number of similarities, the stronger are the inferences of identity and distinctiveness.

> Even a long list of similarities does not necessarily establish an inference of distinctiveness. In the final analysis, the issue is the rationality of the inference of distinctiveness rather than the sheer number of similarities."

*Pinnell*, 311 Or at 111 (internal citations omitted). The methodology "must be so distinctive that both crimes can be attributable to one criminal. In other words, the *modus operandi* must be unusual." *Barnum*, 157 Or App at 75 (holding, based on expert testimony, that sending accusatory letters casting suspicion on the victims of the crime both before and after the commission of the crime was distinctive enough to constitute a signature crime). *See also Pitt*, 352 Or at 577 (holding that, in case of child sexual abuse, evidence that the defendant committed a second similar uncharged act lacked a "unique and repeated feature that makes the act stand out" so as to be admitted as evidence of identity); *State v. Arnold*, 262 Or App 22, 27-28, 324 P3d 538 (2014) (holding that, "although [the] two sets of crimes bear a resemblance," there was no signature element that marked the crimes as the handiwork of the accused when evidence showed that, in both the charged and uncharged crimes, someone stole a car, tried to evade police, and reversed into a patrol car). A "classic example of a *modus operandi* having a signature quality is the 'mark of Zorro.'" *Id*. at 24 n 1 (citing *Pinnell*, 311 Or at 110 n 18).

Defendant argues that, here, none of the evidence of the charged burglaries or the Coffee Rush burglary was distinctive. Regarding the methodology, defendant argues that none of the elements to which the state pointed—entry via pry bar, crimes committed at night, targeting of the cash register, similarities in type of victim (local restaurants)—were so distinctive as to warrant the inference that all of the burglaries were attributable to only one criminal. Defendant also argues that the similarities in clothing worn by defendant during the Coffee Rush burglary and that of the suspect on the surveillance videos were not particularly distinctive. Defendant argues that the blue plaid hoodie appears to be a mass-produced garment, presumably worn by any number of people; that burglars commonly wear gloves and masks to hide their identities; and the wallet chain was not "peculiar or unique."

We agree with defendant that, when considered in isolation, perhaps none of the similarities above would alone support an inference that all of the burglaries were committed by the same person. However, we do not consider each similarity in isolation to determine whether it is, on its own, sufficiently distinctive. Rather, we consider all of the similarities together with the dissimilarities, to determine whether the evidence supports a rational inference that the crimes were committed by one person. *Pinnell*, 311 Or at 111. Although a "long list of similarities does not necessarily establish an inference of distinctiveness," as a general proposition, the greater the number of similarities, the stronger the inference of distinctiveness. *Id.* "In the final analysis, the issue is the rationality of the inference of distinctiveness." *Id.*

Applying that standard, we conclude that the trial court was correct in concluding that evidence of the Coffee Rush burglary was admissible under OEC 404(3) to identify defendant as the perpetrator of the six charged burglaries. A number of similarities exist between the seven crimes, including their geographic proximity, the nature of the locations as closed dining establishments, the late night or early morning entry, the method of entry via a pry bar, the targeting of cash registers, and the blue plaid hoodie, black jacket, and wallet chain worn by the perpetrator.

We recognize that a series of after-hours burglaries of restaurants targeting cash registers and occurring over the course of several months and within the same general area involving a pry bar is not, on its own, sufficiently distinctive. That is likely the *modus operandi* of many burglaries occurring in a populated area over the course of several months. For that reason, proof of a very high degree of similarity between crimes "is insufficient by itself to justify admitting the uncharged crime to prove the accused's identity." *Id*. It is significant, however, that within each series of those very similar burglaries, including the seventh one in which defendant was apprehended, the suspect was either captured on video or seen wearing the same combination of several items of identical clothing and an accessory. In particular, we are persuaded that there is a rational inference of distinctiveness based on the unlikely combination of

several items worn consistently by the suspect during that highly similar series of burglaries.[4] We also note that there were few dissimilarities in the crimes—notably excepting the particular establishments that were burglarized and the dates of some of the burglaries.

The trial court was particularly persuaded that the blue plaid hoodie itself rose to the level of the "mark of Zorro." Again, we need not determine if the blue plaid hoodie alone was sufficiently distinct, because the hoodie combined with the other similarities permitted a rational inference from which a factfinder could, but did not have to, conclude that all seven crimes were committed by the same person.

The trial court did not err in admitting evidence of the Coffee Rush burglary under OEC 404(3) to prove defendant's identity in connection with the six charged burglaries.

Affirmed.

---

[4] Of course, two different people can wear the same hat, mask and cape of Zorro and leave a "Z" with a sword at the scene of the crime. The issue in this case is whether there is a rational inference of distinctiveness when a particular combination of items is observed at a highly similar series of crimes.