No. 164       February 26, 2025       273

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON
and City of Portland,
*Plaintiffs-Respondents,*

*v.*

ROBERTO RICON LEDESMA,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR10363; A181057

Eric L. Dahlin, Judge.

Submitted October 23, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, Robert M. Wilsey, Assistant Attorney General, and Denis M. Vannier filed the brief for respondents.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Reversed and remanded for entry of a judgment omitting the conditions on Count 3; otherwise affirmed.

**POWERS, J.**

Defendant appeals his convictions for third-degree sexual abuse, public indecency, harassment, and indecent exposure, raising two assignments of error. In his first assignment of error, he argues that the prosecutor made improper remarks during closing argument that constituted plain error because they denied defendant a fair trial under the analysis in *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). We conclude that the remarks were not so egregious that they could not have been cured with an appropriate instruction and that defendant was not denied a fair trial. Accordingly, we reject the first assignment. In his second assignment of error, defendant argues that the trial court erred by imposing probation-like conditions as part of the sentence on Count 3, when the court was not imposing a probationary sentence. The state concedes the error, and we accept the state's concession. Accordingly, we reverse and remand for entry of a judgment that does not include the conditions on Count 3, and otherwise affirm.

The parties are familiar with the facts such that a detailed recitation of the facts is not necessary for this memorandum disposition opinion.[1] Defendant was charged with six crimes based on his actions in a Northeast Portland neighborhood in September 2020: Counts 1 and 2 were alleged to have been committed against S; Counts 3 and 4 are alleged to have been committed against A-R; and Counts 5 and 6 are offenses against the state and City of Portland, respectively. The trial court granted a motion for judgment of acquittal on Counts 1 and 2 because S did not show up at trial and there was no evidence presented as to those two charges.

---

[1] In both the opening and answering briefs, the parties cite to transcripts by page number alone. Because the transcripts are continuously paginated across multiple files, that is precise enough to identify the cited pages; however, that practice does not comply with ORAP 5.20(1), which requires record citations in briefs to make appropriate reference "to pages and volumes of the transcript." Typically, not including which transcript volume—*i.e.*, which file—does not cause much inconvenience for those seeking to verify the cited information. In this case, however, there are 22 separate transcript files. Moreover, we observe that this noncompliance with the ORAP is not unique to this case or these particular practitioners; this is not intended as a criticism of their hard work preparing the briefs. Rather, we make this lengthy observation to increase awareness of the importance of compliance with the ORAP to reduce confusion and facilitate the appellate process for everyone involved.

At trial, witnesses recounted multiple instances of defendant engaging in offensive touching and unwanted sexual behavior at several locations in the neighborhood. The witnesses recounted details about defendant's appearance that tended to identify defendant as the same person involved in the various acts. Specifically, a witness saw defendant yelling and exposing himself in the parking lot of a veterinary clinic. That witness described defendant's clothing, which included a blue button up shirt with a pattern of yellow bananas. The witness also called the police, and an officer arrived and spoke with defendant. Other witnesses' descriptions of defendant were consistent with that description. Further, another witness who encountered defendant had posted a photo of defendant on Nextdoor, a social media app that provides a forum for people to connect with their neighbors. That photo was admitted as an exhibit and all of the testimony came in without objection.

The victim named in Counts 3 and 4 ran away from defendant after he turned her around, made explicit sexual statements to her, and grabbed her chest and shoulder, touching her breast. One of the witnesses who testified at trial explained that she stayed inside her locked car in her driveway while defendant made explicit sexual statements to her, grabbed his crotch, then exposed himself. Defendant left only after that witness, who testified to being scared and feeling threatened, called 9-1-1.

During summation, the prosecutor referred to the "neighborhood being terrorized by one man." That statement did not refer to facts outside of the record or plainly invite the jury to decide the case on an improper basis. Rather, the prosecutor's statements referenced evidence that was in the record and made a narrative connection between the incidents that were not part of the charged conduct. The connection allowed a jury to infer that the witnesses were all describing the same person and compare the witnesses' descriptions to the photo of defendant that was admitted into evidence.

The prosecutor also made a reference to defendant having the "exact same M.O. every single time." The prosecutor's ambiguous reference to "M.O." may have been an attempt

to refer to *modus operandi*, which can be evidence showing that a defendant operated in a novel or distinctive manner that identifies that person as the perpetrator. *See generally State v. Brown*, 303 Or App 304, 310, 463 P3d 526 (2020) (describing the requirements for admission of *modus operandi* evidence). However, it is not obvious that the jury would have understood "M.O." in the technical legal sense, rather than a shorthand way of arguing that defendant behaved similarly. Thus, the prosecutor's reference to evidence that came in without objection is not so egregious that it would amount to plain error.

When we review an unpreserved claim of improper argument by a prosecutor, a defendant "must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Chitwood*, 370 Or at 312. Here, defendant's unpreserved claim of error does not surmount that high bar. The prosecutor's statement that defendant's actions had terrorized the neighborhood may have been improper to the extent that it referred to defendant's uncharged conduct; however, it is not likely that the jury would have been influenced by the statement to decide the case on an improper basis, and, in any event, the reference could have been adequately addressed with a curative instruction. Further, the parts of the evidence that suggested people in the neighborhood being "terrorized" included one of the named victims, A-R, who ran away after defendant grabbed her shoulder and touched her breast and one of the witnesses, who stayed in her locked car while defendant yelled, gestured, and exposed himself. Both that evidence and argument, and the argument that defendant used the "exact same M.O." multiple times would not likely have led the jury to decide the case on an improper basis. The jury would likely have understood the evidence as helping to identify defendant as the person who did the charged acts and acknowledging the results of defendant's criminal actions, *viz.*, that his actions terrified people in the neighborhood, who testified about defendant's conduct.

Turning to the second assignment of error, as noted earlier, the state concedes that the trial court erred by

including probation-like conditions in the sentence on which it had imposed incarceration rather than probation. *See, e.g.,* *State v. Hall*, 282 Or App 9, 385 P3d 1225 (2016), *rev den*, 360 Or 752 (2017) (explaining that the trial court lacked authority to impose a condition prohibiting contact with the victim in addition to term of imprisonment). The state's concession is well taken, and, to the extent that defendant's claim of error is unpreserved, we exercise our discretion for the same reasons explained in *Hall*.[2] *See id.* at 11. Accordingly, we reverse the judgment and remand for the court to enter a judgment that does not impose conditions on a term of incarceration.[3]

Reversed and remanded for entry of a judgment omitting the conditions on Count 3; otherwise affirmed.

---

[2] As defendant notes, some conditions were announced at sentencing, but most were not and appeared for the first time in the judgment. Preservation is excused as to the latter conditions, but the claim of error is unpreserved as to the conditions that were announced.

[3] Defendant seeks a disposition consistent with the tagline that we use here. The state remonstrates that we should remand for resentencing because the other counts refer to conditions imposed on Count 3. The trial court imposed a probationary sentence for Counts 4, 5, and 6 that refer to Count 3. The wording of our disposition, however, does not preclude the trial court from making adjustments to account for those references. That does not require "resentencing" because the conditions on the other counts are not changing.