Argued and submitted January 20; decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings October 20, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

NATHAN THOMAS CHITWOOD,
*Petitioner on Review.*

(CC 15CR48036) (CA A165817) (SC S068655)

518 P3d 903

Defendant was convicted on sexual abuse charges involving his then-13-year-old stepdaughter. On appeal, defendant argued that the prosecutor, in her rebuttal closing argument, made two highly improper statements, which, he contended, deprived him of a fair trial. He had not objected to those statements, but he argued on appeal that they were so prejudicial that the trial court judgment should be overturned on plain error review. The Court of Appeals agreed that the statements were improper, but it declined to conduct plain error review. *Held*: The prosecutor's statements—referring to a matter not in evidence and misstating the state's burden of proof—constituted plain error, and the court exercises its discretion to correct that error.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Lindsey Burrows, O'Connor Weber LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Greg Rios, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Kistler, Senior Judge, Justice pro tempore.**

_____

* On appeal from Douglas County Circuit Court, Francis Burge, Judge. 310 Or App 22, 483 P3d 1157 (2021).

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case. DeHoog, J., did not participate in the consideration or decision of this case.

WALTERS, C. J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Garrett, J., dissented and filed an opinion, in which Balmer, J., and Kistler, S. J., joined.

**WALTERS, C.J.**

In a 20-count indictment, defendant was accused of sexually abusing his then-13-year-old stepdaughter. A jury acquitted defendant of all but three counts. Defendant appealed his convictions, contending that the prosecutor had made two highly improper statements during the rebuttal closing argument. Defendant did not object to either of those statements, but, on appeal, he argued that the prosecutor's argument was so prejudicial that the trial court judgment should be overturned on plain error review. The Court of Appeals agreed that the prosecutor's statements were improper, but it declined to conduct plain error review. That court reasoned that the prosecutor's argument was not so prejudicial as to deny defendant a fair trial and that there was a possibility that defense counsel's failure to object was strategic. *State v. Chitwood*, 310 Or App 22, 483 P3d 1157 (2021). We allowed defendant's petition for review and now hold that the prosecutor's argument constituted plain error: The prosecutor's statements were impermissible and, taken together, were so egregious that they deprived defendant of a fair trial. We exercise our discretion to review that error and reverse the decision of the Court of Appeals.

The following procedural facts are uncontested. Defendant's then-13-year-old stepdaughter reported that defendant had subjected her to various forms of sexual abuse over the course of a year. Defendant was charged with three counts of first-degree sexual abuse, five counts of second-degree sodomy, one count of second-degree sexual penetration, 10 counts of second-degree rape, and one count of unlawful delivery of marijuana to a minor. In charging each sexual offense the indictment begins with the same wording: "The defendant, on or between August 2, 2014, and August 2, 2015, in Douglas County, Oregon, did unlawfully and knowingly" engage in the charged conduct. The indictment does not allege facts differentiating the sexual offense counts from each other. At trial, the victim testified to multiple instances of sexual abuse. There was no physical evidence supporting the allegations, and defendant consistently denied that the abuse had occurred.

The following facts provide context for defendant's present challenge to the prosecutor's rebuttal closing argument. During *voir dire*, the prosecutor questioned a prospective juror, Strong, who ultimately was not seated. Strong revealed that he had been accused, falsely, of sexually abusing his daughter. According to Strong, the child was examined by a doctor, who determined that the allegation was false, and no charge was brought against Strong.

Prior to closing arguments, the trial court instructed the jury, concerning the burden of proof, as follows:

"The defendant is innocent unless and until the defendant is proven guilty beyond a reasonable doubt. The burden is on the state, and the state alone, to prove the guilt of the defendant beyond a reasonable doubt.

"Reasonable doubt is based on common sense and reason. Reasonable doubt is not an imaginary doubt. Reasonable doubt means an honest uncertainty as to the guilt of the defendant. You must return a verdict of not guilty if, after careful and impartial consideration of all the evidence in the case, you are not convinced to a moral certainty that the defendant is guilty."

The court did not define the phrase "moral certainty."

During her closing argument, the prosecutor emphasized that the case turned on credibility, and she asked the jury to find that defendant was not credible. In response, defense counsel highlighted inconsistencies in the child's allegations and pointed to the lack of specificity in the state's case. The prosecutor then made the following rebuttal closing argument:

"I get to speak to you one last time because I have the burden of proof and that's the reason I get to speak with you. * * *

"The things that I want to cover with you is [*sic*] do you remember Mr. Strong, our juror that said he was falsely accused and he described to you that his false accuser was washed out at the forensic interview stage? I don't know if you all remember that but he claimed he had been falsely accused of a sex crime and she washed out because it was false. And this is not false.

"I want to talk to you about moral certainty because that's the threshold. Deep down in your core is your moral

core and that's where you're deciding this case from. Moral certainty. And if, after considering all the evidence, and again, I encourage you to listen to and look at everything that you see here today. Based on the evidence presented to you, without bias or sympathy for anyone, if you determine that [defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt."

Defendant did not object to that argument, ask for a curative instruction, or move for a mistrial. Nor did the trial court offer a curative instruction or declare a mistrial.

After the prosecutor concluded her rebuttal closing argument, the trial court gave additional jury instructions explaining the verdict form, but it did not reinstruct the jury on the substantive legal standards or the elements of the offenses. Defendant was convicted of one count of first-degree sexual abuse, one count of second-degree sodomy, and one count of second-degree rape.

Defendant appealed his convictions to the Court of Appeals, arguing, as relevant here, that the prosecutor's rebuttal closing argument, quoted above, amounted to prosecutorial misconduct and that the trial court had plainly erred in failing to issue a curative instruction or declare a mistrial.

The Court of Appeals agreed that the prosecutor's argument was impermissible in both respects identified by defendant:

"It is not permissible to base closing argument on extra-record evidence. *** And the prosecutor's assertion that she had proved her case beyond a reasonable doubt if the jury felt that defendant should not live with an adolescent girl is not an accurate statement of the law and risked misleading the jury into thinking it could convict based on its comfort level with defendant living with an adolescent girl. That appeal was, in effect, an impermissible plea to the jury to decide the case based on how the evidence made it feel about defendant, instead of deciding it based on a determination that it was persuaded by the evidence that defendant had committed the charged crimes."

*Chitwood*, 310 Or App at 27. The court noted, however, that "defendant did not object[,] so we are in a plain error posture." That, the court said, "means that we would have to be

persuaded to exercise our discretion to correct the alleged error, were we to conclude that it was plain." *Id.*

The court gave two reasons for declining to exercise its discretion. It first stated, without elaboration, that the record did not compel the conclusion that defendant had been denied a fair trial. *Id.* And it then stated that the possibility that defense counsel had chosen, for strategic reasons, not to seek a curative instruction or mistrial weighed against correcting plain error. *Id.* at 28. The court said that "there is a possibility that defendant made a strategic choice not to request a mistrial[,] [insofar as the] prosecutor's remarks occurred in rebuttal, at the very end of trial, a point at which defendant may well have had a sense of how the trial was going and may have wanted it to go forward to the jury, rather than end in a mistrial." *Id.* Similarly, the court said, it was possible that defense counsel had made a strategic choice not to request a curative instruction "so as not to highlight the prosecutor's argument with an instruction addressing it right before the case went to the jury." *Id.* The court cited this court's decisions in *State v. Fults*, 343 Or 515, 520, 523, 173 P3d 822 (2007), for the proposition that "the possibility that [the] defendant made a strategic choice not to object" weighs against correcting plain error and that appellate courts should "take into consideration any strategic purpose that [a] defendant may have had in not objecting to the trial court's course of action." *Id.*

On review, defendant agrees with the Court of Appeals that the prosecutor's rebuttal closing argument was impermissible, but he argues that that court erred in declining to conduct plain error review. Defendant contends that he neither invited the prosecutor's remarks nor benefitted from them and asks this court to conclude that the prosecutor's argument was so egregious that it denied him a fair trial. Defendant asks that we exercise our discretion and reverse the judgment of conviction.

## I.  ANALYSIS

We begin our analysis with the obvious obstacle to our review—the fact that defendant did not object to the prosecutor's rebuttal closing argument or move for a mistrial.

Because of that, defendant is entitled to review only if we find "plain error" and are willing to consider it. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may, in its discretion, consider a plain error.").

The first step in a plain error analysis is to determine whether the claimed error is "plain," which, in turn, involves examining the following three factors: (1) whether the claimed error is one of law; (2) whether the claimed error is obvious and not reasonably in dispute; and (3) whether the claimed error appears on the record. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If those requirements are satisfied, the second step is to decide whether to exercise discretion to consider the error. "That discretion entails making a prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case." *Id.* at 630.

Here, defendant describes the error that he contends is "plain" as an error by the trial court in failing to order a mistrial or issue curative instructions. *See, e.g.*, *State v. Fanus*, 336 Or 63, 84, 79 P3d 847 (2003); *State v. Simonsen*, 329 Or 288, 301, 986 P2d 566 (1999); *State v. Montez*, 324 Or 343, 356, 927 P2d 64 (1996) (all identifying issue as whether trial court's error in failing to act to address prosecutor's allegedly impermissible comments was plain error). If the trial court had been asked to take those actions and denied motions to do so, an appellate court would review such a denial for abuse of discretion. *State v. Davis*, 345 Or 551, 582-83, 201 P3d 185 (2008); *State v. Bowen*, 340 Or 487, 508, 135 P3d 272 (2006) (both applying that standard). And such a denial would not constitute an abuse of discretion unless the effect of the prosecutor's misconduct was to deny a defendant a fair trial. *Davis*, 345 Or at 583. Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct. *Id.* However, some prosecutorial statements may be "so prejudicial that, as a practical matter, the bell once rung, cannot be unrung by

such an admonishment." *Id.* (quoting *State v. Jones*, 279 Or 55, 62, 566 P2d 867 (1977) (internal quotation marks omitted)). Ultimately, an appellate court is required to decide "whether, under the circumstances as a whole, defendant was denied the right to a fair trial, as a matter of law, by the events that transpired at trial." *Davis*, 345 Or at 583; *see also State v. Compton,* 333 Or 274, 293, 39 P3d 833 (2002), *cert den,* 537 US 841 (2002) (same).

As noted, those principles apply when an appellate court reviews a preserved challenge to a prosecutor's remarks and a court's denial of a motion for mistrial. Here, of course, defendant did not object to the prosecutor's argument or make a motion for mistrial, and, accordingly, the trial court did not make rulings subject to appellate review. Nevertheless, appellate review is permitted, and reversal may be warranted if "it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *Montez*, 324 Or at 357. Thus, in this instance, the standard for our review of a preserved error and for our review of a claim of plain error is identical. That is, as in the context of a preserved error, it is not enough for a defendant to show that a prosecutor's comments were improper; a defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial. In that situation, we have described the denial of the right to a fair trial as indicating "plain error." *Id.*

In using that moniker, we have thought of the error as attributable to the trial court—describing the error as the trial court's failure to step in and declare a mistrial. *See, e.g.*, *Montez*, 324 Or at 357. But another way to view the error is as an error by the prosecutor in making remarks that are so egregious that, if the defendant had made a motion for mistrial, the trial court would have erred, as a matter of law, in denying it. Understanding the error in that way is consistent with the test for legal error—whether the *prosecutor's comments* were so prejudicial as to have denied defendant a fair trial. Describing the claimed error that way

properly focuses the inquiry without changing the substantive standard that must be met to permit appellate review.[1]

Again, to establish legal error, a defendant who seeks review of an unpreserved challenge to prosecutorial

---

[1] In adopting that focus, we align ourselves with the description of the error used by the federal courts. The federal courts' analysis appears uniformly to focus exclusively on whether the prosecutor's remarks were erroneous and unduly prejudicial; whether the trial court should have intervened is not a factor in the analysis. *See, e.g.*, *United States v. Young*, 470 US 1, 105 S Ct 1038, 84 L Ed 2d 1 (1985) (Court recognized that trial court should have intervened, but plain error analysis centered on whether prosecutor's remarks were erroneous and whether they deprived the defendant of a fair trial); *United States v. Roberts*, 119 F3d 1006 (1st Cir 1997) (prosecutor plainly erred in commenting on defendant's failure to testify and in alluding to evidence not in the record during closing, and conviction had to be vacated; trial court's failure to intervene not discussed); *United States v. Elias*, 285 F3d 183 (2d Cir 2002) (prosecutor's comments were erroneous but not so prejudicial as to warrant reversal; trial court's failure to intervene not discussed); *United States v. Vargas*, 583 F2d 380 (7th Cir 1978) (prosecutor's erroneous statement in closing constituted plain error and warranted reversal; trial court's failure to intervene not discussed); *Government of the Virgin Islands v. Mills*, 821 F3d 448 (3d Cir 2016) (prosecutor's improper statements in closing were clearly erroneous, but court found that defendant's substantial rights had not been violated and therefore reversal was not warranted; trial court's failure to intervene not discussed); *United States v. Mitchell*, 1 F3d 235, 242 (4th Cir 1993) (prosecutor's statements in closing were improper because they encouraged jury to convict for an impermissible reason and they "prejudicially affected the defendant's substantial rights," requiring reversal; trial court's failure to intervene not discussed); *United States v. Flores-Chapa*, 48 F3d 156 (5th Cir 1995) (prosecutor's closing argument referring to excluded evidence was plain error affecting substantial rights, requiring reversal; court found error should have been "plain" to trial court, but analysis centered on whether the prosecutor's statement affected defendant's substantial rights).

Some states also focus their inquiry in that way. *See, e.g.*, *Collins v. State*, 966 NE2d 96 (Ind 2012) (prosecutor's closing argument in which the prosecutor made disparaging comments about defense counsel and referred to a prior arrest that was not in evidence was highly prejudicial and constituted fundamental error requiring reversal; trial court's failure to intervene not discussed); *Knight v. State*, 672 So 2d 590, 591 (Fla 1996) (reversing conviction where "prosecutor's improper comments reach[ed] to the very heart of the case and [rose] to the level of fundamental error obviating the need for multiple or contemporaneous objections"; trial court's failure to intervene not discussed); *State v. Betancourt*, 151 Idaho 635, 262 P3d 278 (2011) (court reversed because prosecutor's comment during closing stating that jury could infer defendant's guilt from his invocation of his Fourth Amendment right to refuse to consent to search vehicle was fundamental error and there was a reasonable possibility that the impermissible comments affected the outcome of the trial; trial court's failure to intervene not discussed); *West v. State*, 764 P2d 528 (Okla 1988) (prosecutorial misconduct during closing argument, in which prosecutor indirectly referred to defendant as a liar, used language that improperly played on societal alarm, and improperly commented on defendant's refusal to continue talking to police after they started questioning him, which constituted fundamental error that went to foundation of case, requiring reversal; trial court's failure to intervene not discussed).

statements must demonstrate that the statements were so prejudicial that they deprived the defendant of a fair trial. We proceed to that question, and, in doing so, we take a different approach than did the Court of Appeals. That court began by considering whether the prosecutor's statements were permissible, found that they were not, and then, rather than considering whether those improper statements constituted "plain error," proceeded to the second step in the plain error analysis and declined to exercise its discretion to conduct review. In following that path, the Court of Appeals did not consider the factors used to determine whether unpreserved error is "plain"; that is, (1) whether the claimed error is one of law; (2) whether the claimed error is obvious and not reasonably in dispute; and (3) whether the claimed error appears on the record. We find it helpful to complete that inquiry before we turn to the second, discretionary, step in the analysis.

A.    *The prosecutor's argument was plainly impermissible.*

As discussed, defendant highlights two aspects of the prosecutor's closing argument as impermissible and cognizable as plain error. The first is the prosecutor's comment referencing "Mr. Strong," a prospective juror:

> "The things that I want to cover with you is [*sic*] do you remember Mr. Strong, our juror that said he was falsely accused and he described to you that his false accuser was washed out at the forensic interview stage? I don't know if you all remember that but he claimed he had been falsely accused of a sex crime and she washed out because it was false. And this is not false."

The prosecutor's discussion of her conversation with the prospective juror during *voir dire* was impermissible in two ways. First, in deciding a defendant's guilt or innocence, a jury may consider only facts properly received in evidence. *See Cler v. Providence Health System-Oregon*, 349 Or 481, 488, 245 P3d 642, 646 (2010) (trial counsel's freedom to comment on evidence in closing is not without limitations, and "[o]ne such limitation is that counsel may not make statements of facts outside the range of evidence") (internal quotation marks omitted); *State v. Wederski*, 230 Or 57, 61,

368 P2d 393 (1962) (reversing trial court ruling declining to order mistrial based on prosecutor's improper invitation to jury to consider matters not in evidence). Second, a prosecutor may not encourage the jury to decide the case on an improper basis. *See State Highway Commission v. Callahan*, 242 Or 551, 558, 410 P2d 818 (1966) (inflammatory arguments encourage jury to decide case on improper basis and are impermissible); *Bratt v. Smith et al.*, 180 Or 50, 60, 175 P2d 444 (1946) (arguments appealing to "passion and prejudice" encourage jury to decide case on improper basis and are impermissible).

Here, the prosecutor violated both rules. She raised the prospective juror's recitation of what had happened in a prior situation—facts not in evidence—and used those facts to suggest an improper basis for reaching a conclusion—that, because, in the prior instance, the victim's accusations had "washed out" at the forensic interview stage and that had not happened here, the victim's accusations in this case should be taken as true. The prior situation and this case were similar in that both involved child sexual abuse, and, in both, professionals had conducted forensic interviews of the children who had made accusations. But, the prosecutor argued, the prospective juror's accuser "washed out" at the "forensic interview stage *** because [the accusation] was false." In contrast, the prosecutor argued, "this [accusation] is not false." That argument exceeded the bounds of the permissible.

The second aspect of the prosecutor's argument that defendant highlights is the prosecutor's reference to the trial court's jury instruction regarding reasonable doubt: "You must return a verdict of not guilty if, after careful and impartial consideration of all the evidence in the case, you are not convinced to a moral certainty that the defendant is guilty." As the United States Supreme Court has explained, use of the phrase "moral certainty" in jury instructions means the same thing as "beyond a reasonable doubt":

> "[Historically,] moral certainty meant a state of subjective certitude about some event or occurrence. *** Indeed, we have said that proof to a moral certainty is an equivalent phrase with beyond a reasonable doubt. *** [And it does

not mean] anything different today than it did in the 19th century."[2]

*Victor v. Nebraska*, 511 US 1, 12, 114 S Ct 1239, 127 L Ed 2d 583 (1994) (citations and internal quotation marks omitted). In turn, the beyond-a-reasonable-doubt standard "impress[es] upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused." *Id*. at 15.

> In her rebuttal closing, the prosecutor told the jury:

> "I want to talk to you about moral certainty because that's the threshold. Deep down in your core is your moral core and that's where you're deciding this case from. Moral certainty. And if, after considering all the evidence, and again, I encourage you to listen to and look at everything that you see here today. Based on the evidence presented to you, without bias or sympathy for anyone, if you determine that [defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt."

That statement distorted the burden of proof by suggesting, incorrectly, what the jury must find in order to convict defendant. Rather than confirming to the jurors that they must "reach a subjective state of near certitude of the guilt of the accused," *Victor*, 511 US at 15, the prosecutor told the jurors that they could find defendant guilty if they "determine[d] that defendant should not reside with an adolescent girl." In addition, by equating that determination with "moral certainty," the prosecutor urged the jurors to decide

---

[2] The United States Supreme Court, in *Victor v. Nebraska*, 511 US 1, 14, 114 S Ct 1239, 127 L Ed 2d 583 (1994), did, however, recognize that the phrase "moral certainty" is obscure and may confuse modern juries: "We are willing to accept [the] premise that 'moral certainty,' standing alone, might not be recognized by modern jurors as a synonym for 'proof beyond a reasonable doubt.'" For that reason, some courts around the country have discouraged its use. *See*, *e.g.*, *People v. Hewlett*, 133 AD2d 417, 418, 519 NYS2d 555 (1987) (it is reversible error to use the phrase "moral certainty"); *Com. v. Bonds*, 424 Mass 698, 703, 677 NE2d 1131, 1133 (1997) ("We conclude that these instructions which equate proof beyond a reasonable doubt with moral certainty, and then give no content to the phrase 'moral certainty' except to compare it with the certainty required to make important personal decisions cannot withstand constitutional scrutiny."). This court has also agreed that including the phrase "moral certainty" in the instruction on reasonable doubt "is not particularly helpful to the jury." *State v. Williams*, 313 Or 19, 37, 828 P2d 1006 (1992).

the case on an improper basis; the comment appealed to the jurors' moral sensibility about an irrelevant circumstance rather than their certainty about defendant's guilt based on the evidence presented. That comment was improper and impermissible.

B.    *The prosecutor's impermissible argument was cognizable as plain error.*

As we have explained, however, that conclusion does not end the inquiry. The prosecutor's improper comments are reviewable as "plain error" only if they constitute legal error, and they rise to that level only if they are so prejudicial that they deprived defendant of a fair trial. For the following reasons, we conclude that, taken together, the prosecutor's comments meet that standard.

First, the requirement that the state prove every element of the offense beyond a reasonable doubt is fundamental to the American justice system. *In re Winship*, 397 US 358, 363-64, 90 S Ct 1068, 25 L Ed 368 (1970); *Mahorney v. Wallman*, 917 F2d 469, 472 (10th Cir 1990) (describing the reasonable doubt standard as a "constitutionally rooted * * * basic right"); *State v. Rosasco*, 103 Or 343, 357, 205 P 290 (1922) ("The presumption of innocence is not a mere form, but a substantial part of the law."). The beyond-a-reasonable-doubt standard "provides concrete substance for the presumption of innocence * * * [and] lies at the foundation of the administration of our criminal law." *Winship*, 397 US at 363 (citation omitted). Because that standard is so fundamental, a prosecutor's misstatement of it can be so prejudicial that plain error review and reversal are warranted. *United States v. Roberts*, 119 F3d 1006, 1011 (1st Cir 1997) (plain error justified reversal based, in part, on prosecutor's misstatement of the burden of proof); *Floyd v. Meachum*, 907 F2d 347, 355 (2d Cir 1990) (overturning state conviction because of prosecutorial misconduct that "in effect distort[ed] the burden of proof by suggesting incorrectly what the jury must find in order to reach a certain verdict").

Second, the timing of the prosecutor's remark about the burden of proof exacerbated the risk that it would be prejudicial. The comment came at the end of the prosecutor's rebuttal closing argument. Thus, it was the last thing

that the jury heard before beginning deliberations. And, because it was the last thing the jury heard, its impact was likely to have been significant, insofar as a defendant had no opportunity to make a counter argument to the jury.

Arguments made in rebuttal have the power of recency in the minds of the jury. Research shows that people tend to remember best, and be influenced most, by the latest event in a sequence, making rebuttal the most persuasive aspect of closing arguments. *See, e.g.*, Ryan Patrick Alford, *Catalyzing More Adequate Federal Habeas Review of Summation Misconduct: Persuasion Theory and the Sixth Amendment Right to an Unbiased Jury*, 59 Okla L Rev 479, 513-15 (2006) (summarizing empirical psychological research showing that tendency); *United States v. Sanchez*, 659 F3d 1252, 1259 (9th Cir 2011) (reversing conviction on plain error review due to prosecutorial misconduct during rebuttal closing argument, stating that, "[g]iven the timing, the impact was likely to be significant, and the court did not intervene"); *United States v. Alcantara-Castillo*, 788 F3d 1186, 1198 (9th Cir 2015) (reversing conviction on plain error review due to prosecutorial misconduct during rebuttal closing argument, reasoning that, "[b]ecause the government's rebuttal was the last thing the jury heard before beginning its deliberations, the impact of the misconduct was likely to be significant" (internal quotation marks omitted)); *United States v. Torres-Colón*, 790 F3d 26, 34 (1st Cir 2015) ("We view problematic statements during rebuttal with particular scrutiny, because the government's rebuttal argument offers the last word before the jury begins deliberations."); *United States v. Ayala-García*, 574 F3d 5, 20 (1st Cir 2009) (reversing conviction on plain error review due to prosecutorial misconduct in rebuttal closing, stating, "the rebuttal context increased the likelihood of prejudice because the improper remarks were among the last words spoken to the jury by the trial attorneys" (internal quotation marks omitted)).

Here, the prosecutor's improper argument was the final word on the meaning of reasonable doubt; the court had instructed the jury on that topic earlier, before the closing arguments. Thus, the last thing that the jury heard—from either the lawyers or the court—regarding the state's

burden of proof was the prosecutor's incorrect and inappropriate statement: "Based on the evidence presented to you, without bias or sympathy for anyone, if you determine that [defendant] should not reside with an adolescent girl, that's your moral certainty."

Such an infringement of a defendant's fundamental rights cannot easily be corrected by curative instruction, as two of this court's prior decisions demonstrate. In *Jones*, the state charged the defendant with rape. 279 Or at 57. At trial, the prosecutor persisted in insinuating to the jury that the defendant had committed rapes many times before, even calling an officer who so testified. After the defendant objected, the trial court instructed the jury "to disregard the statement made by [the officer]. You are directed to erase it from your mind and pay no attention to it." *Id.* at 62. The trial court denied the defendant's motion for a mistrial, but, on review, this court reversed, concluding that the defendant had been denied a fair trial. We noted that the prosecutor had to have known that there was no evidence in the record that the defendant had prior convictions for rape, reasoned that the case depended on the credibility of the prosecuting witness and the defendant, and concluded that the cautionary instruction could not unring the bell. *Id.* at 62-63.

In *State v. White*, 303 Or 333, 336, 736 P2d 552 (1987), the prosecutor remarked, in opening statement, that the defendant had refused to testify in his codefendant's trial. Immediately thereafter, defense counsel moved for a mistrial. The trial court concluded that the remark was inappropriate but denied the motion on the ground that, at that stage of the proceeding, "an indication to the jury that whether or not [the defendant] chose to testify in a prior proceeding [was] not relevant[.]" *Id.* at 337. The trial court then instructed the jury that the defendant's refusal to testify was "not relevant" and not "probative of the evidence in this case." *Id.* at 338.

On review, this court concluded that that curative instruction was insufficient, reasoning that it is well-established that a prosecutor is prohibited from drawing the jury's attention to the defendant's exercise of the right

to remain silent. We explained that the admission of such evidence is "'usually reversible error *** if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury.'" *Id.* at 341-42 (quoting *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600 (1977)). And, in view of that "presumably harmful effect," we drew the conclusion that the trial judge had been required to do something more than instruct the jury that defendant's refusal to testify in his codefendant's trial was irrelevant. *White*, 303 Or at 342-44. We said that "the misconduct [in *White*] was at least as serious as that involved in [*Jones*]," and we held that the defendant was entitled to a new trial. *Id.* at 344.

In this case, the prosecutor told the jurors that they could convict defendant if they were convinced, not that he had committed the charged crimes, but that, in the future, he should not live with an adolescent girl. The jurors' feelings about whether defendant should reside with an adolescent girl were not at issue in the case, and those feelings certainly had nothing to do with whether the state had proved defendant's guilt beyond a reasonable doubt or to a "moral certainty." "[P]rosecutors may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence." *Sanchez*, 659 F3d at 1256 (internal quotation marks and citations omitted). The bell of misdirection that the prosecutor rang in this case, directing the jury away from the facts toward emotion and risk of error, was an infringement of defendant's fundamental rights and was a bell that was as difficult to unring as were the bells of misconduct at issue in *White* and *Jones*.

Third, the prosecutor compounded the error by referring to other irrelevant matters that were not in evidence when she raised the issue of a prospective juror's prior experience and suggested that the jury could consider what happened there to decide that, in this case, the victim was telling the truth. The prosecutor's blatant and repeated argument that it was up to the jurors to decide defendant's fate based on their own beliefs and experiences would

have made it nearly impossible for the trial court to correct course and ensure that defendant received a fair trial. Although, strictly speaking, the prosecutor did not raise facts that the jury had not previously heard, she framed that information in a new way, giving the jury permission to ignore defendant's fundamental right to proof beyond a reasonable doubt—a right that is every bit as fundamental and long-standing as the right to remain silent. The court did not provide a cautionary instruction, but, even if it had, we conclude that any such instruction would not have been sufficient to cure the prejudice inherent in the prosecutor's improper remarks.

Fourth, and finally, the case was close. *See Alcantara-Castillo*, 788 F3d at 1197 ("That the government felt the need to engage in \* \* \* improper tactics only enforces just how close the credibility contest was, further demonstrating that [the prosecutor's misconduct] was highly prejudicial."). Defendant was charged with 20 criminal offenses, 19 of them sexual offenses. The indictment did not specify a particular instance of criminal conduct charged in each count. Each of the sexual abuse, sodomy, and rape counts were indistinguishable from one another and each count alleged that the criminal conduct occurred at some point during a one-year period. There was no physical evidence supporting any of the charges against defendant. Rather, the case came down to a credibility contest between defendant and the victim, and the jury acquitted defendant of 17 of the 20 counts charged in the indictment.

Given all of those factors, we conclude that, taken together, the prosecutor's comments—her misstatement of the reasonable doubt standard and her improper reference to the prospective juror—were so prejudicial as to have denied defendant a fair trial and that plain error review is permitted: The error was one of law because the statements were so prejudicial that, if defendant had objected and moved for a mistrial, the trial court would have committed legal error had it denied the motion. The error also is obvious and not reasonably in dispute, and it appears on the record. Therefore, there is a legal basis for our review of the claimed error, and we proceed to the second step in the plain error analysis.

C.   *We will exercise our discretion to correct the error.*

As discussed, the decision at step two of the plain error analysis requires an exercise of discretion, and, generally, consideration of factors such as "the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case." *Vanornum*, 354 Or at 630. However, before we undertake that analysis, a preliminary matter requires our attention: this court's role on review.

In this case, as we have noted, the Court of Appeals considered the prosecutor's comments to be improper, but it declined to determine whether those comments constituted "plain error." Instead, the court indicted that it would not exercise its discretion to conduct review even if it had determined that the error were plain, reasoning, in part, that the record did not compel the conclusion that defendant was denied a fair trial. Although the Court of Appeals relied on that conclusion at the second, rather than at the first, step in the analysis, the conclusion it reached, and on which it relied, was one of law. For the reasons we have given, that conclusion also was erroneous. The record compels a conclusion that defendant was not afforded a fair trial.

Given that error, we could send this case back to the Court of Appeals, as we did in *Vanornum*, to recognize the error it identified as "plain error" and then to decide anew whether to exercise its discretion to correct it. However, such a remand is not always required. ORAP 5.45(1) gives "the appellate court" discretion to consider a plain error, and, in the circumstances here presented, we consider it appropriate that we undertake that analysis.

Looking to the factors articulated in *Vanornum*, the one that most obviously calls for our exercise of discretion is the "gravity of the error"—here, an error so grave that it denied defendant a fair trial. The reasoning that supports our finding of plain error also urges our intervention to correct it.

The state suggests, however, that the "competing interests of the parties" militates against a decision to correct the error. That is, the state argues that the Court of

Appeals correctly concluded that there was "a possibility that defendant made a strategic choice" not to request a mistrial or a curative instruction. *Chitwood*, 310 Or App at 28. In such a case, it would be unfair to the state were we to exercise our discretion to correct the error.

As noted, the Court of Appeals relied on this court's decision in *Fults*, 343 Or at 523, where this court held that the possibility that the defendant had made a strategic choice not to object weighed against correcting plain error. The Court of Appeals concluded that there was such a possibility in this case:

> "Here, there is a possibility that defendant made a strategic choice not to request a mistrial. The prosecutor's remarks occurred in rebuttal, at the very end of trial, a point at which defendant may well have had a sense of how the trial was going and may have wanted it to go forward to the jury, rather than end in a mistrial.

> "As for a curative instruction, there is a possibility that defendant made a strategic choice not to request one so as not to highlight the prosecutor's argument with an instruction addressing it right before the case went to the jury."

*Chitwood*, 310 Or App at 28. For those reasons, the court declined to exercise its discretion to correct the errors.

*Fults*, however, is inapposite. In *Fults*, the defendant was convicted of multiple criminal offenses and sentenced to a 36-month term of probation. On appeal, the defendant asserted that the trial court's failure during sentencing to make findings supporting a departure sentence from 24 months to 36 months on one of the counts was plain error. 343 Or at 518. This court held that plain error review was inappropriate, because "the record permit[ted] the conclusion that [the] defendant's failure to object was a conscious choice." *Id.* at 520. We observed that the error complained of was technical, insofar as the trial court had already imposed an undisputedly permissible 36-month probation term on another count. Additionally, we noted that the defendant had expressed a desire to be released on probation as soon as possible and the trial court had reluctantly agreed. And we said that, under those circumstances, the defendant might reasonably have feared that an objection to

the departure sentence would "break the deal" and the best tactic would be to remain silent. Thus, we concluded, "there [was] a significant possibility that [the] defendant's failure to object *was in fact* a strategic choice." *Id*. (emphasis in original). As we later described that decision, we emphasized the defendant's "'apparent encouragement of the judge's choice.'" *State v. Serrano*, 355 Or 172, 188, 324 P3d 1274 (2014) (quoting *Fults*, 343 Or at 523).

Thus, *Fults* stands for the proposition that, when the record shows that a defendant invited or encouraged a trial court's decision, the defendant may not take advantage of the failure to object to that decision. Since *Fults*, this court has proceeded accordingly. In *Serrano*, the defendant had challenged on review the trial court's answers to certain questions from the jury. This court concluded that plain error review was not appropriate because the court had consulted the parties before crafting the answer and the parties, including the defendant, had agreed with the answer given. 355 Or at 184. Likewise, in *State v. Steen*, 346 Or 143, 206 P3d 614 (2009), the defendant had assigned as plain error the admission of hearsay evidence. This court declined plain error review because

> "the record before us discloses not only that defendant failed to object to testimonial hearsay when it was presented, but also that defense counsel stipulated to the procedure that the state and the trial court followed. In this case, the record does not present an opportunity for us to address the role that silence plays in reviewability, because defendant's trial strategy registers on the record *fortissimo*."

*Id*. at 154; *see also State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 606, 215 P3d 847 (2009) (court declined to review as plain error alleged deprivation of youth's right to confront a witness where the youth made an explicit decision to stipulate to the witness's unavailability at trial; youth "may not seek refuge from that deliberate choice on appeal").

In the foregoing cases, the alleged errors were the trial courts', and this court concluded that the record showed that the defendant had encouraged or even sought the court's ruling. In this case, the state similarly views the error as error by the trial court in failing to act, *sua sponte*,

to declare a mistrial or issue curative instructions. The state argues that defendant may have wished to avoid drawing attention to the prosecutor's statements and may not have wanted the trial court to act, and he therefore encouraged or benefitted from the trial court's failure.

There are several problems with that argument. First, although the record may permit an inference that defendant had reason to remain silent, the record does not demonstrate that, as in the cases discussed above, defendant invited or encouraged a particular trial court ruling. Here, the prosecutor's improper remarks did not call for a trial court ruling. The prosecutor did not make the remarks in arguing a legal point or in response to something that defense counsel stated. Rather, the prosecutor's remarks were unexpected, and there can be no legitimate argument that defendant encouraged or invited them.

Second, even if defendant may have benefited by remaining silent and failing to object to the prosecutor's remarks, that advantage, if any, occurred at the instigation of the prosecutor. Objecting during closing arguments is fraught with risk:

"Defense counsel may be concerned about maintaining good relationships with prosecutors, which can be important for her ability to advocate successfully for future clients. Additionally, counsel may be concerned about irritating the judge or jury by interrupting opposing counsel, which can heighten jurors' general tendencies to favor prosecutors over defense counsel. More specifically, defense counsel may be concerned about the jury's likely reaction if her objection is overruled. A trial court decision to overrule an objection to improper prosecutorial misconduct may actually encourage the jury to rely on those comments, although appellate courts rarely recognize that type of prejudice. Additionally, courts and some commentators overstate the value of a trial court's decision to sustain an objection to prosecutorial trial misconduct. In fact, the misconduct may still prejudice the defendant: The defense attorney's complaint, even if sustained by the court, may have exactly the opposite effect from the one intended. It may call attention to the prosecutor's improper remarks and reemphasize them in the jurors' minds."

Mary Nicol Bowman, *Mitigating Foul Blows*, 49 Ga L Rev 309, 357-58 (2015) (footnote and internal quotation marks omitted). A defense lawyer's concern about drawing further attention to objectionable information is legitimate and supported by empirical evidence. *See* Shari S. Diamond *et al.*, *The "Kettleful of Law" in Real Jury Deliberations: Successes, Failures, and Next Steps*, 106 NW U L Rev 1537, 1592 (2012) (discussing and citing an empirical study on the effect of an overruled objection). Here, the prosecutor's inclusion of improper statements in her rebuttal closing argument put defense counsel, through no fault of his own, in the untenable position of either objecting and risking calling further attention to the matter and incurring other adverse consequences or deciding not to object and potentially losing the right to make an argument based on the prosecutor's misconduct on appeal.

Moreover, we must remember that, just as defense counsel "may well have had a sense of how the trial was going and may have wanted it to go forward to the jury," *Chitwood*, 310 Or App at 28, the prosecutor also may have had a sense of how the trial was going and may have thought it was worth the risk of a mistrial to make the arguments that she did. The state argues that "[g]ranting plain-error review where it is inferable that a defendant omitted an objection for strategic gain incentivizes such gamesmanship in other cases." But that argument ignores the fact that, here, defendant did not initiate the "game." Indeed, precluding plain error review here could encourage prosecutors to make improper remarks in rebuttal argument in future cases.[3]

Given the prosecutor's role in creating the predicament, and, given that the record does not show that defendant encouraged or invited the prosecutor's conduct, we do

_____

[3] A prosecutor with a weak case has "incentives under the current system to [engage in] misconduct \*\*\*, as the risk of an appellate court ordering a new trial is less significant than the risk of an acquittal at trial." Bowman, *Mitigating Foul Blows*, 49 Ga L Rev at 316. When a court finds error but fails to correct it, the court risks "tacitly inform[ing] prosecutors that they can weigh the commission of evidentiary or procedural violations not against a legal or ethical standard of appropriate conduct, but rather, against an increasingly accurate prediction that the appellate courts will ignore the misconduct." Bennett L. Gershman, *The New Prosecutors*, 53 U Pitt L Rev 393, 425 (1992).

not consider the benefit that defendant may have obtained by failing to object to that conduct to be unfair or a basis for refusing to conduct plain error review. It is not just the appellate court's responsibility to ensure that a defendant receives a fair trial—it is also the prosecutor's. In *Jones*, 279 Or at 63, this court stated:

> "While it is expected that a prosecuting attorney will be zealous in his efforts to convict a defendant believed by him to be guilty of a crime, it must also be remembered that the prosecuting attorney, as a representative of the state, owes a primary duty to see that all criminal defendants receive a fair trial."

In a similar vein, the United States Supreme Court admonished that the prosecutor

> "'is [a] representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'"

*Viereck v. United States*, 318 US 236, 248, 63 S Ct 561, 87 L Ed 734 (1943) (quoting *Berger v. United States*, 295 US 78, 88, 55 S Ct 629, 79 L Ed 1314 (1935)).

In deciding to exercise our discretion to correct what we have found to be plain error, we disagree with the dissent's contention that our ruling today places a defendant who timely objects to a prosecutor's improper remarks and asks for a curative instruction or mistrial in a worse position than a defendant who remains silent and claims plain error on appeal. It is true that a lawyer who, for example, asks for and receives a curative instruction must live with the result, even if this court, on plain error review, ultimately would have concluded that a curative instruction was insufficient to protect the defendant's right to a fair trial. But we

do not think that that means that defendants who remain silent are better off than defendants who speak up, or that defense counsel has an incentive to refrain from making a meritorious objection. The lawyer's duty is to zealously protect the client's interests. If a lawyer believes that a prosecutor's remarks are so prejudicial as to deprive the client of a fair trial, we do not think that our decision here will deter the lawyer from making a timely objection. We agree that trial courts are in the best position to assess the effect that a prosecutor's remarks may have. Therefore, lawyers will be well advised to seek a favorable, immediate, ruling from the trial court, rather than take the risk that, years later, an appellate court will find, on a cold record, that the defendant was denied a fair trial.[4]

Relatedly, we think that the dissent overstates the risk that we will be rewarding silence in cases that present "closer questions, where reasonable lawyers and judges may differ in real time as to whether or to what degree a prosecutor's conduct crossed the line." 370 Or at 336 (Garrett, J., dissenting). A defendant who fails to preserve an error at trial will only prevail on appeal if an appellate court concludes that the defendant was denied a fair trial. That is an exceedingly high bar. Where it is a "close question" whether a prosecutor crossed the line, it is doubtful that reasonable lawyers will forego making timely objections in the trial court, hoping for success on appeal. In such cases, the likelihood of prevailing on appeal is much slimmer, and counsel are even more likely to advocate for immediate corrective rulings.

In this case, we conclude that the prosecutor's rebuttal closing argument deprived defendant of the right

_____

[4] We also do not agree with the dissent that our ruling today poses a dilemma for the trial court concerning how to respond to improper prosecutorial comments when a defendant does not object. The dissent states that, in that situation, "[t]rial judges who intervene *sua sponte* risk making 'corrections' that defendants do not want, subjecting courts to criticism or even reversal on appeal; judges who do not do so risk having verdicts thrown out on plain-error grounds." 370 Or at 332-33 (Garrett, J., dissenting). Those, however, are not the only two options available to the trial court. A third course of action eliminates the dilemma that the dissent highlights: The trial court could send the jury out, call the parties to the bench, point out the improper comment, and ask for the parties' positions. That approach could resolve the matter and eliminate the potential for plain error review.

to a fair trial and constituted "plain error." We also conclude that "the ends of justice" require that we exercise our discretion to correct the error and reverse defendant's convictions.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.,** dissenting.

Those in the best position to assess the impact of the prosecutor's comments in closing argument were the people in the courtroom at the time. *See State v. Farrar*, 309 Or 132, 167, 786 P2d 161 (1990) (affirming denial of motion for mistrial, reasoning that the trial judge was "in the best position to assess the impact of the district attorney's comment on the jury"); *see also State v. Pratt*, 316 Or 561, 583, 853 P2d 827, *cert den*, 510 US 969 (1993) (affirming denial of motion for mistrial based on improper witness testimony, noting that the trial judge "was present throughout the entire trial and *** heard the inadvertent testimony in its full context").

Defendant did not object to the prosecutor's statements. The majority's analysis is driven by the view that those comments were so egregious that defendant was deprived of a fair trial, and that defendant's counsel was put to a Hobson's choice in which he feared that calling further attention to the improper comments might be even worse than remaining silent. Another possibility, however, is that defendant's counsel perceived that the prosecutor had made a transparent attempt to salvage a weak case, that the jury would see through it, and that it was to defendant's *advantage* to leave things alone. That tactical choice could have been informed by the sorts of observations that are available to trial practitioners but not, unfortunately, to an appellate court reviewing a cold record, such as the manner in which the prosecutor's comments were delivered (not just the words that were used), the visible reactions of jurors (including body language), and the "full context" of the trial. *Pratt*, 316 Or at 583. In short, defendant's counsel could have believed that the prosecutor's comments had been ineffective or had even backfired—a belief arguably borne out by the fact that defendant was ultimately acquitted on 17 of 20 counts.

Even putting the possibility of tactical choice aside, the content of the prosecutor's comments does not compel the conclusion that defendant was deprived of a fair trial. Those comments probably could have been adequately addressed through a curative instruction—had defendant wanted one. This case is not like the two cases cited by the majority for the proposition that "the bell once rung, cannot be unrung." 370 Or at 311-12; *id.* at 319-20 (discussing *State v. White*, 303 Or 333, 736 P2d 552 (1987), and *State v. Jones*, 279 Or 55, 566 P2d 867 (1977)). In both of those cases, the prosecutor introduced new and extremely prejudicial information from outside the record; this court concluded both times that the jury could not be expected to "unhear" the damning information it had just received. *See White*, 303 Or at 343-44 (concluding that a curative instruction was insufficient where the prosecutor informed the jury that the defendant had declined to testify in the prior trial of a codefendant, thus improperly drawing the jury's attention to the defendant's exercise of his constitutional right); *Jones*, 279 Or at 61-63 (concluding that a curative instruction was insufficient in a prosecution for rape where the prosecutor elicited unsubstantiated testimony that the defendant had committed rape "many times before").

Here, in contrast, although the prosecutor's reference to her dialogue with prospective juror Strong during *voir dire* was outside the bounds of proper argument, it introduced no new information that the jurors had not previously heard. The suggestion that jurors should ask themselves whether defendant should "reside with an adolescent girl" was wrong and inflammatory, certainly. But the majority gives no reason to think that jurors of ordinary intelligence would not have responded appropriately to an instruction from an authority figure—the trial judge—telling the jury that the prosecutor had overstepped. Our system rests on the assumption that jurors are capable of that and more.[1]

---

[1] The majority emphasizes that the prosecutor's remarks occurred during rebuttal and were thus among the "last words" the jury heard. 370 Or at 317-19. But that argument cuts both ways. If defendant had objected and the trial court had given a curative instruction, the last words that the jury would have heard would have been the trial judge's admonishment that the prosecutor's improper comments should be disregarded. That could have been a powerful force in defendant's favor.

*See State v. Terry*, 333 Or 163, 177, 37 P3d 157 (2001) ("Jurors are assumed to have followed their instructions, absent an *overwhelming* probability that they would be unable to do so." (Emphasis added; internal citation and quotation marks omitted.)). I do not see an "overwhelming probability" here that the jurors were so awed by the prosecutor's attempt at rhetorical flourish that they could not have followed instructions to decide the case based on the evidence.

For all of those reasons, the Court of Appeals reasonably decided that the record did not compel the conclusion that defendant was deprived of a fair trial, and that, even assuming that a plain error occurred in this case, it was not one that the court would exercise its discretion to correct.

In charting a different course, the majority adopts a novel conception of "error," reasoning that the reversible error here was committed by the *prosecutor*. 370 Or at 312-13. That formulation is without precedent in our case law, at least to my knowledge. Under the Oregon Rules of Appellate Procedure, appellate courts review actions and omissions by lower tribunals, not parties. ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or other *ruling* that is being challenged." (Emphasis added.)). "Error" is committed by the only participant in the trial process that has the capacity to rule: the court. A party does not "err" by, for example, introducing hearsay evidence; the trial court errs by admitting it over an objection. A party does not "err" by requesting a jury instruction that misstates the law; the trial court errs by giving it.

Here, the prosecutor did not "err" by saying things to which defendant *could* have objected; if error occurred, it could only have been by the trial court in not taking remedial action. Both parties recognize as much in the way that they have framed the issues, and we should frame them the same way: whether the *trial court* plainly erred in failing to either (1) give a curative instruction to the jury *sua sponte*, or (2) order a mistrial *sua sponte*. That is, we should ask whether the trial court's failure to take those steps meets the criteria for plain-error review, *i.e.*, an "error of law" that is "obvious and not reasonably in dispute" and is "apparent

on the record." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013); *see State v. Montez*, 324 Or 343, 357, 927 P2d 64 (1996) ("[T]he prosecutor's comments were not so prejudicial that *the trial court's failure* to grant a mistrial *sua sponte*, on the basis of those comments, amounts to an 'error of law apparent on the face of the record.'" (Emphasis added.)).

The distinction is not merely semantic. Focusing on whether the "prosecutor" erred obscures the plain-error analysis by diverting attention from what the trial court was supposed to *do* in the face of objectionable comments to which defendant did not object. The majority explains that characterizing the error here as prosecutorial is "consistent with the test for legal error," reasoning that "a defendant who seeks review of an unpreserved challenge to prosecutorial statements must demonstrate that the statements were so prejudicial that they deprived the defendant of a fair trial." 370 Or at 312, 313-14. That of course is the same showing that we would require of a defendant who *preserved* the challenge by timely seeking a mistrial: that the prosecutor's statements were so prejudicial that the trial court erred in denying the defendant's timely motion. Indeed, the majority states that, "in this instance, the standard for our review of a preserved error and for our review of a claim of plain error is identical." 370 Or at 312.

But those standards are not the same, because the question whether the prosecutor's statements would have required a trial court response if defendant had requested one is altogether different from the question whether the trial court was required to respond where defendant made no such request. Describing the error in this case as "prosecutorial" allows the majority to avoid saying expressly that the trial court did anything wrong. But whether this result is couched in terms of trial court error or not, trial judges understand that the burden is on them to get things right to avoid reversal on appeal, and today's decision presents them with a dilemma. How should they respond to improper prosecutorial comments when a defendant does not object, and when circumstances suggest to the trial judge that defendant might have made a conscious choice? Trial judges who intervene *sua sponte* risk making "corrections" that

defendants do not want, subjecting courts to criticism or even reversal on appeal; judges who do not do so risk having verdicts thrown out on plain-error grounds.

The majority's analysis creates a further oddity, in that defendant fares better on review by virtue of having remained completely silent than he would have if he had timely objected to the prosecutor's comments and requested a curative instruction. That paradox flows from the majority's treatment of *State v. Fults*, 343 Or 515, 173 P3d 822 (2007).

In *Fults*, we explained that discretion to correct plain error is appropriately *not* exercised when "the record permits the conclusion that [the] defendant's failure to object was a conscious choice." 343 Or at 520. The majority does not dispute that defendant reasonably could have made a conscious choice here, but it attempts to clear that hurdle by arguing that *Fults* applies only where a defendant "invited or encouraged a trial court's decision," whereas, in this case, "the record does not demonstrate" that "defendant invited or encouraged a particular trial court ruling." 370 Or at 324, 325.

*Fults* does not support that interpretation. *Fults*, rather, expressly *separated* the question of whether the defendant had invited or encouraged the ruling from the question of whether the defendant could have made a strategic choice not to object, concluding that the latter could have occurred even though the former had not. *Fults*, 343 Or at 520. In *Fults*, the defendant responded to the trial court's imposition of a three-year probation term, although the sentencing guidelines only provided for a two-year probation term, by stating "[w]e have no objection to that, whatsoever." *Id.* at 517-18. On appeal, the defendant argued that the trial court plainly erred in sentencing him to a probation term that exceeded the presumptive probation term for his offense. *Id.* at 518. The state responded that the defendant had invited the error and that the error, in any event, was not plain. *Id.* at 519. The Court of Appeals held that declining to object was not the same as "inviting" the error because the defendant had not "actively sought" the sentence, and that the error was plain. *State v. Fults*, 210 Or App 150, 153-54,

149 P3d 1248 (2006), *rev'd*, 343 Or 515, 173 P3d 822 (2007). That court then concluded, without further explanation, "nor is there any indication that defendant's failure to object constituted a strategic choice for which defendant now seeks to shift the blame." *Id.* at 154.

On review, this court held that the Court of Appeals had conflated the question of invited error with that of whether the defendant had "possibly" made a strategic choice:

> "Although we do not question the court's conclusion that defendant did not engage in conduct that constitutes invited error, we do think the record permits the conclusion that defendant's failure to object was a conscious choice: This defendant desired a sentence that would lead to his release on probation as soon as possible. The trial judge, although restive, was willing to give him that. Moreover, the court *had already decided to impose an indisputably permissible* 36-month probation term for one of defendant's other offenses. Under those circumstances, defense counsel easily could have feared that a technical objection to the extra 12 months of probation on [one] conviction would 'break the deal,' and that the best tactic for his client was to remain silent. In other words, the Court of Appeals' statement to the contrary notwithstanding, there is a significant possibility that defendant's failure to object was *in fact* a strategic choice."

*Fults*, 343 Or at 520 (citing *State v. Gornick*, 340 Or 160, 169-70, 130 P3d 780 (2006) (emphases in original)). We went on to explain that, even assuming the existence of a plain error, the Court of Appeals should have considered the possibility that the defendant had made a strategic choice at the second step of the analysis. *Id.*

Thus, where the record suggests a "significant possibility" that a trial court's action or inaction was the result of a party's strategic choice not to object, that counsels against the exercise of discretion to correct an asserted plain error.[2]

---

[2] The case that *Fults* cited, *Gornick*, indicated that no plain error even exists in that circumstance. In *Gornick*, this court reviewed a record that involved a defendant who "sat by quietly" and made no objections to a trial court's finding of aggravating facts. 340 Or at 169. Because the record supported multiple competing inferences as to whether the defendant made a strategic choice, counsel was ineffective, or the trial court had erred, we concluded that the trial court's error

Contrary to the majority's view, *Fults* made it clear that such an inference was permissible even where the party "remain[ed] silent." *Id.*

Under the majority's interpretation of *Fults*, however, plain-error correction is appropriate where a defendant remains silent regarding the asserted error but inappropriate where the record affirmatively indicates that the defendant made a strategic choice. That will lead to incongruous results.

Suppose that, here, immediately after the prosecutor made her comments, defendant had objected and the trial judge had called counsel to the bench to discuss options, including whether defendant intended to seek a mistrial. Suppose that defendant had said no and requested a curative instruction, and then, on appeal, made the same plain-error argument for a new trial that he makes here. As I understand the majority's reasoning, the court in that instance would not exercise its discretion to correct the error because the record would reflect that defendant made a choice. Defendant's counsel, by timely asserting his client's rights, would have left defendant in a worse position on appeal than if he had said nothing. Moreover, if the majority is correct that the prosecutor's comments were so egregious that *no* curative instruction would have made a difference, it is odd that the availability of plain-error correction should turn on whether defendant requested one.

The foregoing reasons illustrate why the correction of unpreserved error is supposed to be "made with utmost caution." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). It has destabilizing consequences for trial courts, and it unsettles the reasonable expectations of litigants, who assume that they are in control of the issues that the court will resolve. In the atypical cases where prosecutors flagrantly break the rules, those systemic consequences may

---

was not "appearing on the face of the record." *Id.* at 169-70 (internal quotation marks omitted). Our subsequent cases have left unresolved the question whether a party's strategic choice not to object is relevant to the *existence* of plain error, or relevant only to the discretionary choice to correct such an error, or both. For purposes of this dissent, I assume that it is relevant only at the second step, the exercise of discretion.

seem attenuated. But most cases will present closer ques-
tions, where reasonable lawyers and judges may differ in
real time as to whether or to what degree a prosecutor's con-
duct crossed the line. Today's decision will contribute more
uncertainty as to how they should respond.

In addition to my disagreement with the way that
the majority characterizes the nature of the "error" in this
case, I also question the majority's decision to displace the
Court of Appeals' exercise of discretion with this court's own.

Plain-error review is a two-step process in which
the court determines, first, whether plain error occurred,
and, second, whether to exercise its discretion to correct the
error. *Ailes*, 312 Or at 381-82. The Court of Appeals chose
not to exercise that discretion in this case, noting that
the record does not compel the conclusion that defendant
was deprived of a fair trial and that defense counsel could
have been speculating on a favorable verdict. The majority
reaches a different conclusion as to the existence of plain
error. It does not follow, however, that the Court of Appeals
"erred" at step two of the analysis, when it declined to exer-
cise its *Ailes* discretion.

The concept of "speculating on the verdict" is one
that this court has previously cited as a basis for denying
untimely requests for relief. In *State v. Marsh*, 260 Or 416,
440, 490 P2d 491 (1971), this court held that, even though
the trial court should not have given a supplemental jury
instruction, it would not reach the defendant's plain-error
claim that the instruction warranted a mistrial. *See id.* at
430 n 29 (listing examples of cases where defense counsel
made a tactical decision not to object). The court noted that
the defendant's attorney was "able and experienced" and
"may well have deliberately withheld exceptions to the terms
of those instructions under the strategy that the defendant
might obtain complete acquittal as a result of such instruc-
tions." *Id.* at 440.[3]

---

[3] On a different but related point, we have specifically cautioned that requests
for a mistrial based on a prosecutor's statements or questions must be timely and
prompt—*i.e.*, before further trial developments. *See, e.g.*, *State v. Walton*, 311 Or
223, 247-48, 809 P2d 81 (1991), *overruled in part on other grounds by State v.
Davis*, 336 Or 19, 30, 77 P3d 1111 (2003) (concluding that a motion for mistrial

The majority does not deny that the tactic of speculating on the verdict is a real one, but it rejects that as a basis for denying plain-error relief in this case. At the same time, the majority does not say that the Court of Appeals *abused* its discretion in concluding that the possibility of strategic choice *was* a basis for denying plain-error relief. Nothing in today's decision prevents the Court of Appeals, in future cases, from inferring that a party could have made a strategic choice not to object and, for that reason, declining to correct the error.

By simply choosing a different exercise of discretion *here* than what the Court of Appeals chose, the majority's approach is in tension, if not plainly inconsistent, with what this court did in *Vanornum*, 354 Or at 631. There, we noted that "the Court of Appeals is the error-correcting tribunal to which claims of error and plain error may be presented as a matter of right." *Id*. We reasoned that "[t]he nature of discretion is that it is best exercised by the entity principally charged with its exercise. In this instance, that is the Court of Appeals." *Id*. We ultimately concluded that the correct disposition in that case, where we concluded that the error was "plain," was to remand the case to the Court of Appeals to decide whether to exercise its discretion to review the error. *Id*.

The approach articulated in *Vanornum* is jurisprudentially sound. The Court of Appeals is the tribunal in Oregon with principal responsibility for correcting error. It annually decides many cases in which litigants assert plain error; this court decides very few. The Court of Appeals is in a superior position, therefore, to consider such questions as whether the exercise of *Ailes* discretion in a particular case is consistent with how that discretion has been exercised in other cases. Such questions are meaningful if the correction of plain error is to be perceived by the bench and bar as— and if it is to be—anything other than *ad hoc*. Accordingly, assuming that the majority were correct in concluding that the error here was plain, the better disposition would be to remand to the Court of Appeals to consider, in light of this court's analysis, whether to exercise discretion to correct it.

based on prosecutor's improper question was untimely where it was not asserted until after additional witnesses had testified).

I respectfully dissent.

Balmer, J., and Kistler, S. J., join in this dissenting opinion.