Argued January 6, reversed and remanded February 9, 1966

# STATE HIGHWAY COMMISSION *v.*
## CALLAHAN ET AL
### 410 P. 2d 818

.

*Leslie B. Hampton,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, G. E. Rohde and J. Robert Patterson, Assistant Attorneys General, Salem.

*Stanley C. Jones, Jr.,* Medford, argued the cause for respondents. On the brief were Jones and Reeder, Medford.

Before McALLISTER, Chief Justice, and PERRY, DENECKE, HOLMAN and SCHWAB, Justices.

HOLMAN, J.

This action was brought by the state to condemn part of defendants' land for the construction of freeway Interstate 5. The property was adjacent to the old Pacific Highway near the Siskiyou Mountain summit in Jackson County and was improved with a residence and a lodge with cocktail lounge and bar. Interstate 5 is a limited access freeway and all access rights of defendants' remaining property were being taken, leaving the balance landlocked and virtually valueless. Upon trial the jury returned a verdict of damage to the property owners in the sum of $67,500 and the state appealed.

■ The first three claims of error relate to the court's refusal to allow a state's expert valuation witness to testify as to the sale price of three parcels of property. The witness testified that, taking into consideration adjustments, two parcels were comparable; but he failed to state what the adjustments were. It would have been improper for the court to admit the sale price until the adjustments were explained. Admittedly, that may not have been the reason for the court's ruling, but the result was proper nevertheless.

■ As to the third parcel, the witness was asked if the parties to that transaction knew that construction of Interstate 5 was contemplated. He replied that possibly the seller did, but he was not sure about the buyer. The property was adjacent to the old highway and was subsequently taken in its entirety by the state. In order for the sale price to be admissible, the property must not only have been reasonably comparable to the property sought to be condemned, but its sale must also have been made under normal and fair market conditions. A sale price affected by the state's contemplated improvement of a highway and subsequent condemnation of adjacent property would not be such a sale. The witness could not say that the parties to the transaction were unaware of the impending construction and condemnations. In effect, he was therefore unable to say the sale was unaffected by artificial market conditions induced by the state. Admissibility of evidence of sales of other land is largely within the discretion of the trial court.

"It is incumbent on the party offering proof of other sales to show the facts which establish similarity." 5 Nichols, Eminent Domain § 21.31, at 446 (Rev 3d ed 1962)

The same would be true of normal market conditions. The trial court did not err in excluding testimony of the sale price of the third parcel.

■ The state offered into evidence and the court refused to admit deeds in defendants' chain of title which showed that part of defendants' property was subject to a reverter clause. The state had been a previous owner of a portion of the property and had deeded it to one of defendants' predecessors in interest. The deed contained a provision that title would revert to the state if the adjacent highway right of way were used by the owner for parking vehicles. The state did not claim that title had reverted because of breach of the condition. The state sought only to introduce the documents to prove that the title contained a possibility of reverter which, in the eyes of a prospective purchaser, would tend to decrease its value.

The property owners contend that introduction of this evidence is not permissible because (1) the parties stipulated the only issue was value, (2) the state alleged defendants claimed to be the owners and defendants admitted the allegation, (3) the state did not allege any qualification of defendants' title and therefore no such issue existed, and (4) the plaintiff in a condemnation case cannot impugn nor disparage the title of the defendants. These arguments amount to an assertion that the state is estopped from raising any issue as to defendant's title.

It is our opinion that the court erred in refusing to admit the offered exhibits. In determining how much he would be willing to pay for the property, any reasonable purchaser would take into consideration the possibility that the reverter could occur at some

time in the future. For that reason the nature of the title was relevant to the issue of fair market value.

"* * * In determining the fair cash market value of the land condemned there should be taken into account all considerations that might fairly be brought forward and reasonably be given substantial weight in negotiations between the owner and a prospective purchaser." *State Highway Comm'n v. Superbilt Mfg. Co.*, 204 Or 393, 412, 281 P2d 707 (1955).

In arguing that the state has conceded the issue of title and is estopped from raising it, defendants cite *Willamet Falls Canal & Lock Co. v. Kelley*, 3 Or 99, 101 (Cir Ct 1869) and 2 Nichols, Eminent Domain § 5.2[2] (Rev 3d ed 1962). This rule may be accurate when the validity of defendant's title is the real issue presented. Here, however, the state is not questioning the validity of title and is not attempting to force defendant to prove ownership of the land. The status of the title was relevant to value and was therefore admissible under the stipulated issue upon which the case was tried.

■ The last three assignments of error relate to the propriety of the closing arguments by defendants' counsel to the jury. The following quotations demonstrate the arguments made, the objections and the rulings of the court.

"Mr. Jones: * * * But Mr. Hampton asked the question and made the statement anything that comes into the public treasury does not end up in their pockets, therefore what is the motivating factor for them to present a case as they have done? And it is that question which I propose to answer. First, there are many motives for human conduct. Now, Mr. Hampton raised this issue, and that is why I am entitled to talk about it.

"In addition to the motive for financial gain, which I do not believe in the slightest can be attributed to these men, there are the motives of a socialistic bureaucracy which resents the interference of the judiciary. And a system that has become as large as our federal highway program has created results never intended.

"Mr. Hampton: We would object to this. Whether or not the federal highway, federal government is a big or large government, or the state government, it is not material as to just compensation.

"Mr. Jones: Your Honor, I think it is very relevant when Counsel asks the question what motive is there for government to reduce just compensation. I think I have a right to answer that question.

"The Court: Objection overruled.

"Mr. Jones: As I said, the system creates a result never intended.

"Now, there has become a desire in this country for super highways in the name of progress, and I am not denying the majority of our citizens want super highways. But can that fact obscure the equally important desire for justice to individual citizens? Now, when a group of men in government are so imbued with the idea of building a super highway that they design a system that creates unjust results, that system is certainly subject to criticism. Now, I don't believe that this system was created intentionally These things just unfortunately grow. And if they have not grown, and if this situation does not exist, how can we, as citizens, justify and condone the assignment to one individual of between five and six hundred appraisal assignments over the three or four years in this county alone? * * * [Tr. 517-518]

* * *

"Now, evidently when a situation like this exists through no intentional fault of anyone, we reach

a point where the end justifies the means. And when we reach that point we have to talk about power. And power as you know from a quotation—

"Mr. Hampton: Your Honor, let the record show that we object to this on the same grounds previously assigned, it is not material, it tends to be inflammatory, it is not confined to the issues in this case.

"The Court: As I understand, this is rebuttal to Mr. Hampton's argument?

"Mr. Jones: Yes, your Honor, it is direct rebuttal to his question and statement.

"The Court: Objection overruled.

"Mr. Jones: I was talking about power, and that which I say to you is not intended to be inflammatory. The backbone of a constitutional liberty in this country, one of the few countries that have democracy and the jury system, is the jury system. And this jury, and juries in every state in these United States, do have the right to do, and have the obligation to pass upon acts of government as it affects their citizens. There is nothing inflammatory or emotional about it, it is a matter of plain vigilance. Our forefathers gave us the Bill of Rights. It is up to us as citizens to protect it. Now, power as I said curbs, and complete power can destroy. [Tr. 520-521]

＊          ＊          ＊

"＊  ＊  ＊  Our forefathers were not satisfied with saying that official duty is presumptively performed, they said we are going to establish a jury system that guarantees that our citizens will have an opportunity to look at this very thing—

"Mr. Hampton: Excuse me. Counsel. Your Honor, we would object again to this testimony. If there was any correlation or reasonable inference from arguments of State's Counsel, it is certainly beyond that point, and we object as not being relevant.

"Mr. Jones: Your Honor, I just completed the answer in the argument. I will be going down to the various items now.

"The Court: The objection will be overruled. [Tr. 522-523]"

Without the existence of extenuating or special circumstances, it is readily apparent that such arguments were highly inflammatory and improper and had no reasonable relevance to the sole issue of valuation of the property condemned. The reason given for the propriety of such arguments was that they were a proper rebuttal to that portion of the state's argument which posed the question as to reasons the state might have for paying less than the actual value of the property being condemned. The excuse is too tenuous. The arguments made by defendants might have been a proper answer if the question were posed as to the reasons the state had for taking the property, but they had no relevance as a response to the question posed by counsel for the state. There was no issue tendered concerning the propriety of the state's taking of the property. Arbitrary exercise of power because of the taking was not an issue. The only issue was the value of the property taken.

We are reluctant to reverse a case for this type of error; however, justice demands that arguments be factual and not inflammatory. *Walker v. Penner,* 190 Or 542, 552-553, 227 P2d 316 (1951). We are not unmindful that the trial judge has a wide discretion as to the scope of the arguments allowed. *Walker v. Penner,* supra, at 554. It was an abuse of his discretion to allow arguments of the type here used.

For the errors enumerated above, the judgment of the trial court is reversed and the case is remanded for a new trial.