Argued and submitted February 16, 1999, affirmed January 26, petition for review denied August 1, 2000 (330 Or 470)

STATE OF OREGON,
by and through its
DEPARTMENT OF TRANSPORTATION,
*Respondent,*

*v.*

Albert A. ALF
and/or Grace E. Alf,
trustees of the Alf Trust,
*Defendants,*

*and*

Mitchell Dale RICKERD,
Tamara Elaine Rickerd,
husband and wife,
and Terry Rickerd,
*Appellants.*

(CV95486; CA A98944)

995 P2d 1197

Charles F. Hudson argued the cause for appellants. With him on the briefs was Lane Powell Spears Lubersky LLP.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

The principal issue in this condemnation action is whether the trial court erred in permitting the state to introduce evidence of the price that defendants[1] paid for the property that was condemned. We conclude that the trial court did not err in admitting the evidence and therefore affirm.

The facts relevant to the disposition of the appeal are not in dispute. The property in question is located on the corner of Highway 99 and Clairmont Street in McMinnville. In 1947, the state acquired an 18-foot-wide right-of-way along the portion of the property adjacent to the highway. In 1954, the owners of the property constructed a drive-in restaurant, Alf's Ice Cream, on the property. The owners used the land located within the state's right-of-way for restaurant parking and for direct access to Highway 99.

In 1989, the state announced its intentions to make use of its right-of-way and to condemn additional property to widen the highway, although actual condemnation proceedings were not commenced until several years later. Meanwhile, the owner of the property was no longer interested in operating the restaurant and sold the property to defendants. All parties were aware of the impending condemnation. The contract of sale, executed in March of 1995, expressly acknowledged that defendants were aware of the state's intention to condemn a portion of the property and that "the purchase price for both the business assets and the real premises has been negotiated * * * to reflect such condemnation proceedings." The final sale price was $75,000, with defendants to retain any proceeds from the anticipated condemnation.

In December 1995, the state initiated this condemnation action. The state condemned in fee simple a narrow strip between 7 and 10 inches wide running the length of the property adjacent to the state's right-of-way along Highway 99. The state also took an easement approximately 5 feet

---

[1] We refer to defendants Mitchell Dale Rickerd, Tamara Elaine Rickerd, and Terry Rickerd. Defendants Albert A. Alf and Grace E. Alf are not parties to the appeal.

wide directly adjacent to the narrow strip of property taken in fee simple. The property taken, including the easement, totaled approximately 703 square feet, for which the state offered, and deposited with the court, $3,700.

At trial, the state's appraiser testified that the value of the property taken amounted to $1,900. The appraiser based that figure on the difference between the value of the entire property before the taking and its value after the taking.

Defendants took the position that they were entitled to approximately $64,000. According to defendants, just compensation included the value of the 703 square feet of property taken, plus damages for costs associated with the replacement of parking that had been located in the state's right-of-way. Although defendants acknowledged that they were not entitled to damages for the loss of parking itself, they insisted that the loss of access to Highway 99 through the state's right-of-way made the cost of replacement parking substantially greater and that they were entitled to that increase in the cost of constructing replacement parking. Defendants' appraiser offered testimony that the value of the 703 square feet of property taken was $4,132 and that the damage to the value of the remaining property resulting from the loss of access and the increased cost of constructing replacement parking totaled nearly $60,000.

The state called defendant Mitchell Dale Rickerd, asked him what defendants paid for the property, and offered the contract into evidence. Defendants objected that such testimony was not admissible because the sale occurred in contemplation of the condemnation itself and was therefore not probative of the fair market value of the land. The state replied that, because the value of the property before and after the condemnation was pertinent to the establishment of the fair market value of the property taken, testimony about what defendants paid for the property—in contemplation of the condemnation—was highly probative of the value of the property after the condemnation. The trial court overruled defendants' objection, allowed the testimony, and received the contract into evidence. The trial court also permitted defendants to introduce evidence of the circumstances of the

sale, the extent to which the price was affected by the anticipated condemnation, and the nature of the prior relationship of the parties. Defendants did just that, offering evidence that the sale price was affected by the anticipated condemnation and that the parties had a longstanding relationship, which affected the sale price of the property.

At the close of trial, defendants took exception to various jury instructions. In particular, defendants objected to the trial court's decision not to instruct the jury to disregard evidence of the March 1995 contract price for the property. The jury returned a verdict for defendants in the amount of $4,371.

■ On appeal, defendants assign error to the admission of the testimony concerning the March 1995 sale price of the property and to the trial court's failure to instruct the jury to disregard any evidence of that sale price. According to defendants, the sale price was affected by the condemnation itself and was not therefore a reliable indicator of fair market value. In support of their argument, defendants place special reliance on *Highway Commission v. Callahan*, 242 Or 551, 553, 410 P2d 818 (1966). The state argues that the trial court did not abuse its discretion in admitting evidence of the sale and in declining to instruct the jury to ignore that evidence. According to the state, *Callahan* stands for the narrow proposition that a prior sale of the condemned property that was affected by anticipated condemnation cannot be used to establish the value of the property *before the condemnation.* In this case, the state argues, the evidence was not offered to establish the value of the condemned property before the condemnation, but rather the value of the remaining property *after the condemnation.* Thus, the price that defendants paid for the property in contemplation of the condemnation is directly relevant to the matter in dispute. We agree with the state.

■ We begin with the admissibility of the evidence of the March 1995 sale. When the state condemns private property for public use, the owner of the property is entitled to "just compensation." Or Const, Art I, § 18. Just compensation generally is taken to refer to "fair market value," which, in turn, refers to what a willing buyer would pay a willing seller.

*Highway Comm. v. Superbilt Mfg. Co.*, 204 Or 393, 412, 281 P2d 707 (1955). In the case of a partial taking of property, fair market value is measured by the value of the property acquired plus any severance damages, that is, any depreciation in the value of the remaining property caused by the taking. *Dept. of Trans. v. Lundberg*, 312 Or 568, 574, 825 P2d 641, *cert den* 506 US 975 (1992).

In determining the fair market value of land, the threshold of relevancy is low. *Lundberg*, 312 Or at 575. The Supreme Court has instructed that

> " 'all considerations that might fairly be brought forward and reasonably be given substantial weight in negotiations between the owner and a prospective purchaser' should be taken into account.' "

*Id.* (quoting *Superbilt Mfg. Co.*, 204 Or at 412). We review determinations of relevancy for errors of law. *State v. Barone*, 329 Or 210, 237, 986 P2d 5 (1999), *cert den* ____ US ____ (2000). We review the trial court's decision to admit relevant evidence for abuse of discretion. *Davis v. Homasote Company*, 281 Or 383, 387-88, 574 P2d 1116 (1978); *see also Callahan*, 242 Or at 553 ("Admissibility of evidence of sales of other land is largely within the discretion of the trial court.").

In *Callahan*, the Supreme Court upheld the trial court's refusal to admit evidence of the sale of other land when the sale price of the land might have been affected by an impending condemnation. The court did not say that the evidence was not relevant. It held only that, because the appraiser could not say that the sale was unaffected by artificial market conditions induced by the anticipated condemnation, the trial court did not abuse its discretion in excluding the witness's testimony as evidence of the value of the property taken by the state. 242 Or at 553-54.

This case presents a different set of facts within a different posture. The trial court allowed the state to introduce evidence of the sale price of the property in question as proof of the value of the property that remained after the taking, not of the value of the property that was taken. That evidence certainly was relevant, as fair market value in a partial takings case includes consideration of the effect of the

taking on the remaining parcel. Moreover, defendants were permitted to introduce evidence of the circumstances of the sale and to argue to the jury why they believed the sale was not representative of the fair market value of their property. Defendants have not identified any way in which that evidence and those arguments were confusing or misleading to the jury. We conclude that the trial court did not abuse its discretion in admitting the evidence of the March 1995 sale.

Given our decision that the trial court did not abuse its discretion in permitting the state to introduce evidence of the March 1995 sale, it necessarily follows that the trial court did not err in declining to instruct the jury to ignore that evidence.

Affirmed.