56 April 17, 2024 No. 235

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NORBETO NESTOR MUNIZ, JR.,
*Defendant-Appellant.*

Washington County Circuit Court
19CR30276; A178335

Andrew Erwin, Judge.

Argued and submitted March 14, 2024.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Colm Moore, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

Defendant appeals a judgment of conviction for one count of second-degree murder, ORS 163.115, and one count of first-degree abuse of a corpse, ORS 166.087. In his sixth assignment of error, defendant contends that "the cumulative effect of the state's improper arguments deprived defendant of the right to a fair trial." Applying the principles articulated in *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), we reverse and remand. That conclusion obviates the need to address defendant's other assignments of error.

The charges in this case stem from the murder of L, whose body was found partially burned in the backyard of the home in which she lived with defendant and her former boyfriend, Niswonger. Defendant's theory of the case was that Niswonger, not defendant, murdered L.

On appeal, defendant points to four aspects of the prosecutor's closing argument which, in his view, "encourage[d] the jury to decide the case based on an improper emotional basis, gravely distort[ed] the burden of proof and presumption of innocence, and inject[ed the prosecutor's] own personal, emotional reaction into the case." Below, we describe three aspects of the prosecutor's argument and the context in which they arose, and we conclude that those three aspects of the prosecutor's closing argument are sufficient to require reversal under *Chitwood*.[1]

First, toward the beginning of the state's closing argument, regarding the abuse of a corpse charge—which was premised on the burning of L's body—the prosecutor argued:

---

[1] The fourth aspect of the prosecutor's closing argument that defendant argues was improper was the prosecutor framing the case as requiring the jury to decide whether *either* Niswonger *or* defendant had murdered L and abused her corpse. That line of argument was potentially but not necessarily problematic. *See State v. Purrier*, 265 Or App 618, 621, 336 P3d 574 (2014) (explaining that the state "permissibly may attempt to persuade the jury that it should believe one version of events and not another," however, "in making that kind of argument, the state must not inappropriately characterize the jury's fact-finding function in a manner that raises some realistic possibility of confusing the jurors about the ultimate standard or burden of proof").

We need not reach the issue of whether the prosecutor's "either/or" argument was problematic or permissible in this case, however, because, as explained below, other aspects of the prosecutor's closing argument, taken together, require reversal under *Chitwood*.

"I don't need to convince anyone in this room of the merits of the charge of abuse of corpse. Whoever did this, absolutely abused [L's] corpse. And if you think about on top of the indignity of doing this to another human being, *think about what this does to a mother who is waiting for the identification of her daughter.*"

(Emphasis added.)

Defendant objected to that line of argument, and the trial court properly sustained the objection, instructing the jury that "consideration of mom's feelings does not really have any relevance" and that "sympathy has no basis in your deliberations."

Second, during his closing argument, defendant argued that law enforcement had "tunnel vision," selected defendant as a suspect, and then focused all of their investigative resources on him. He noted, for example, that the state had not conducted DNA testing on a pair of FILA shoes that had blood splatter on them, or on a shotgun that was in the home. He also argued that there were "simply too many gaps" and "too much unexplored evidence" to convict. Additionally, defendant explained to the jury that he had not put on any evidence and was relying "solely upon the evidence the state presents and fails to present," as was his "absolute constitutional right."

In response to that argument from defendant, the prosecutor began his rebuttal by arguing:

"I think at the outset it's important to understand that—and this is kind of a truism, but the absence of evidence is not evidence. Evidence is evidence. *The absence of evidence doesn't acquit the defendant of a crime any more than it convicts him of a crime.*

"So when you have the absence of evidence like the testing of the FILA shoes, let me ask you this: What benefit, what question would that answer that you don't already have?"

(Emphasis added.)

Third, evidence was presented at trial that defendant had moved a partially nude photo of the victim from Niswonger's bedroom into defendant's bedroom. Defendant

argued that that was a "red herring," noting that the house in which defendant, Niswonger, and the victim lived, had "stacks of girlie magazines [and] pinups on the walls." In response, the prosecutor argued at the end of his closing:

"[Niswonger] had an intimate picture, a topless picture of somebody he cared about behind his door, and [defendant] took that picture after [L] had been murdered and mutilated in that house and put it above the bed where he was sleeping.

"So I agree with [defense counsel] on one thing, and that is, you know, boys will be boys. *** I think this is pretty much a paraphrase of what Detective Brown had to say about it when [defense counsel] asked her, she says, 'Here's the deal, [counsel]. There's a big difference between models who are posing for centerfold pinups in the house and using those for sexual gratification, but taking the topless picture and using that for sexual gratification of a woman who has just been murdered and burned in the house, I find highly disturbing.' *And I'll take it a step further, it's disgusting.* Okay?

"And whether it's for sexual gratification or it's his trophy for somebody that he has killed and he wants to remind himself of that above where he's sleeping, *it doesn't matter. It's disgusting either way, and it shows a twisted mind, the mind of somebody who had murdered and killed [L].*

"One of these two[, Niswonger,] was in his bedroom and heard a scream, and the other[, defendant,] was in the—in the garage beating a hundred-pound girl to death. So when you go back to the jury room, ask yourself who one of these person was for each of these questions, and who the other was, and I think you will all arrive at the same answer, and that is that the last person that [L] saw as she's screaming for her life, as she's on the floor getting beaten to death is [defendant]."

(Emphases added.)

In *Chitwood*, the Supreme Court set out three steps for determining whether a prosecutor's closing argument amounts to reversible plain error. 370 Or 305. First, the reviewing court considers the prosecutor's closing argument to determine whether the argument was improper. *Id.* at 314. Second, the court considers whether the statements were so

prejudicial that they deprived the defendant of a fair trial; that is, whether it would have been an abuse of discretion for the trial court to deny a motion for a mistrial had a motion for mistrial been made. *Id.* at 317; *State v. Montgomery*, 327 Or App 655, 661, 536 P3d 627 (2023), *rev den*, 371 Or 825 (2024). Third, the court considers whether to exercise discretion to correct the error. *Chitwood*, 370 Or at 322.

We have explained that the right to a fair trial "guarantees that a defendant shall be tried by a jury that will decide guilt based on evidence—not emotion or prejudice," and that "prosecutorial statements are improper if they infringe on the defendant's right to a fair trial." *State v. Durant*, 327 Or App 363, 368, 535 P3d 808 (2023) (internal quotation marks omitted). More specifically, our case law has defined prosecutorial misconduct as:

> "any activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence by weighing the legally admitted evidence in the manner prescribed by law. It commonly involves an appeal to the jurors' prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence; or urging them to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors."

*State v. Brunnemer*, 287 Or App 182, 187-88, 401 P3d 1226 (2017) (internal quotation marks omitted).

We agree with defendant that aspects of the prosecutor's closing argument in this case were improper. As the trial court recognized, it was improper for the prosecutor to ask the jury to think about what L's mother experienced while she was "waiting for the identification of her daughter." *See State v. Lundbom*, 96 Or App 458, 461, 773 P2d 11, *rev den*, 308 Or 382 (1989) (improper for prosecutor to make arguments "calculated to elicit an emotional response from the jury"). That line of argument was similar to an improper "golden rule" appeal. *See United States v. Roman*, 492 F3d 803, 806 (7th Cir 2007) (explaining a "'Golden Rule' appeal in which the jury is asked to put itself in [a party's] position is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case

on the basis of personal interest and bias rather than on the evidence" (some internal quotation marks omitted)).

We also agree that it was improper for the prosecutor to interject his personal opinion regarding defendant's conduct of taking the partially nude photo of L from Niswonger's room, and it was improper to characterize that conduct as demonstrating the "twisted mind" of the person who "murdered and killed" L. *Highway Commission v. Callahan*, 242 Or 551, 558, 410 P2d 818 (1966) (inflammatory arguments encourage jury to decide case on improper basis and are impermissible). The line of argument employed by the prosecutor—that taking the photo of L from Niswonger's room means defendant has a "twisted mind" and is more likely to be the person who killed L—sounds in impermissible character-based reasoning rather than a focus on the elements of the charged crimes. *State v. Skillicorn*, 367 Or 464, 478, 479 P3d 254 (2021) (noting propensity evidence can cause factfinders to "convict for crimes other than those charged" or "give more weight to the evidence than it deserves in assessing the guilt of crime charged"); *see also Michelson v. United States*, 335 US 469, 475-76, 69 S Ct 213, 93 L Ed 168 (1948) ("The State may not show defendant's *** ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." (Footnotes omitted.)).

Additionally, we agree with defendant that the prosecutor's statement that "the absence of evidence doesn't acquit the defendant of a crime any more than it convicts him of a crime" misstated the burden of proof. And in doing so, it ran the risk of undermining the presumption of innocence—a "cornerstone of our judicial system"—under which "the law presumes every defendant upon trial charged with crime to be innocent" and the state bears the burden to "prove by evidence to the satisfaction of the trial jury beyond a reasonable doubt that the defendant committed the crime

charged in the indictment." *State v. Schneider*, 328 Or App 697, 701, 538 P3d 1233 (2023) (internal quotation marks and brackets omitted).

On appeal, the state argues that the jury would have understood the prosecutor's comment to merely be a rebuttal to defendant's suggestion that the state's failure to take certain investigative steps created reasonable doubt; to be sure, it was a rebuttal to defendant's argument, but it was also an improper statement of the law.

Taken together, we conclude that the prosecutor's improper statements during closing argument in this case rose to the level of "legal error"; that is, they were so prejudicial that they denied defendant a fair trial and it would have been an abuse of discretion for the trial court to deny a motion for a mistrial had a motion for mistrial been made. *Montgomery*, 327 Or App at 661 (noting that, under *Chitwood*, "we are required to consider the totality of the record in determining whether defendant was denied a fair trial"). The prosecutor's argument during his rebuttal both misstated the burden of proof and encouraged the jury to decide the case with reference to impermissible character-based reasoning that directed the jury "away from the facts [and] toward emotion." *Chitwood*, 370 Or at 317-21 (prosecutor's arguments were so prejudicial that they deprived defendant of a fair trial where prosecutor misstated the state's burden of proof during rebuttal argument, "compounded the error by referring to other irrelevant matters that were not in evidence," and the case was a "close" one); *cf. Durant*, 327 Or App at 371 (noting prosecutor's statements were "not egregious" where prosecutor "did not misstate the law, denigrate anyone, improperly shift the burden of persuasion to defendant, or invite an adverse inference from defendant's exercise of a constitutional right"). And the prosecutor's encouragement of the jury to decide the case with reference to impermissible character-based reasoning was one of the last things the jury heard before deliberating. *Chitwood*, 370 Or at 317-18 (comment that came at the end of prosecutor's rebuttal closing argument more likely to be prejudicial). We also think it significant that the prosecutor's statements during rebuttal came on the heels of the prosecutor's prior

appeal to the juror's emotions when he asked them to consider "what [burning a corpse] does to a mother who is waiting for the identification of her daughter." And that argument was perhaps particularly emotionally impactful on the jury in this case, because L's mother had testified during defendant's trial, and the prosecutor had used her testimony to introduce a picture of L taken while L was alive.

Although we are mindful that, as a general rule, "a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct," we are also aware that some "prosecutorial statements may be so prejudicial that, as a practical matter, the bell once rung, cannot be unrung by such an admonishment." *Id.* at 317 (internal quotation marks omitted). We think the prosecutor's arguments at the end of his rebuttal, when viewed in the context of the record as whole in this emotionally fraught case, including his earlier appeal to the jurors' emotions, constitute such statements.

Further, having determined that the prosecutor's remarks denied defendant a fair trial, and considering the nature of the case, the gravity of the error, and the ends of justice, we exercise our discretion to correct the plain error.

Consequently, we reverse defendant's convictions and remand.

Reversed and remanded.