No. 837 September 24, 2025 603

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AUSTIN BRYAN SUTTON,
*Defendant-Appellant.*

Washington County Circuit Court
22CR21757; A182181

Brandon M. Thompson, Judge.

Argued and submitted August 22, 2025.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jennifer Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Remanded for resentencing; otherwise affirmed.

**TOOKEY, P. J.**

After an argument, defendant shot and killed his roommate in the backyard of their house. A jury found defendant guilty of first-degree manslaughter with a firearm (Count 1) and unlawful use of a weapon (UUW) with a firearm (Count 2). The trial court sentenced defendant to 120 months in prison on Count 1 and to a consecutive term of 60 months in prison on Count 2. On appeal, defendant raises 14 assignments of error. As explained below, we remand for resentencing but otherwise affirm.

*Denial of Motion to Suppress.* In his first assignment of error, defendant argues that the trial court erred when it denied his motion to suppress statements he made to the police. The trial court determined that there was a public safety exception to the requirement to provide *Miranda* warnings under the state constitution as well as the federal constitution. The court indicated that all of defendant's answers to Officer Boliek's questions were admissible under that exception. The court further determined that defendant's later statements to Officer Hoerauf were not confessions or admissions, that Officer Hoerauf's *Miranda* warnings were effective, and that defendant's post-*Miranda* warning statements to Officer Hoerauf were voluntary. The trial court therefore denied the motion to suppress.

On appeal, defendant argues that we should not recognize a public safety exception to the warnings required by Article I, section 12, of the Oregon Constitution, and, if we do, then Officer Boliek's interrogation of defendant exceeded the scope of the exception under both Article I, section 12, and under the Fifth Amendment to the United States Constitution.[1] Defendant also argues that the trial court erred in admitting defendant's statements to Officer Hoerauf. Reviewing for legal error, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), we affirm.

In *State v. Forshee*, 300 Or App 739, 741, 455 P3d 1025 (2019), *rev den*, 368 Or 168; 368 Or 206 (2021), and in

---

[1] Article I, section 12, provides in part that "[n]o person shall *** be compelled in any prosecution to testify against himself."

The Fifth Amendment provides in part that "[n]o person *** shall be compelled in any criminal case to be a witness against himself[.]"

*State v. Jones*, 296 Or App 553, 569-71, 439 P3d 485, *rev den*, 365 Or 557 (2019), we did not decide whether a public safety exception exists to the warnings required by Article I, section 12, because any error in admitting the defendants' pre-*Miranda* statements was harmless. We conclude that a similar analysis applies here to defendant's statements to Officer Boliek, which were cumulative of statements defendant had already made to a 9-1-1 operator, to Officer Garza, and later to Officer Hoerauf. For that reason, the admission of defendant's statements to Officer Boliek had little likelihood of affecting the verdict. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless if there is "little likelihood that the particular error affected the verdict").[2]

Although we need not decide whether a public safety exception exists to the warnings required under the state constitution, because admission of defendant's statements to Officer Boliek had little likelihood of affecting the verdict, that does not resolve defendant's challenge under the Fifth Amendment. "[V]iolations of federal constitutional rights must be analyzed under the federal harmless error test" and a "federal constitutional error is harmless, such that the conviction will be upheld, if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006) (internal quotation marks omitted).

The United States Supreme Court has recognized a public safety exception to the *Miranda* requirement under the federal constitution when there is a "need for answers to questions in a situation posing a threat to the public safety." *New York v. Quarles*, 467 US 649, 657, 104 S Ct 2626, 81 L Ed 2d 550 (1984). Defendant argues that several of Officer Boliek's questions exceeded the scope of that exception. Considering the "hectic" circumstances when

_____

[2] We conclude that the only statements made exclusively to Officer Boliek were inconsequential and also had little likelihood of affecting the verdict. In arguing that the admission of defendant's statements to Officer Boliek was not harmless, defendant argues that, during closing arguments, the state emphasized that defendant repeatedly lied to the police. However, even without his statements to Officer Boliek, the state could have made the same kind of argument based on defendant's statements to the 9-1-1 operator, to Officer Garza, and to Officer Hoerauf.

Officer Boliek first entered the backyard as part of a team of officers responding to a report of a shooting, we conclude that Officer Boliek's questions all fell squarely within the public safety exception to the *Miranda* requirement under the Fifth Amendment. Because defendant's statements to Officer Boliek were admissible under the federal public safety exception, we need not address whether they were harmless under the federal harmless error test.

Defendant separately challenges whether the trial court should have suppressed defendant's statements to Officer Hoerauf after defendant was *Mirandized*. Turning to those statements, "[i]f the state establishes that the police accurately and effectively, although belatedly, gave the suspect the information necessary to a valid waiver of the right against self-incrimination, then, under the Oregon Constitution, a suspect's subsequent voluntary statements will be admissible." *State v. Vondehn*, 348 Or 462, 481, 236 P3d 691 (2010).

Here, Officer Hoerauf provided *Miranda* warnings and defendant indicated twice that he understood his rights. There was a difference in the questioning before and after Officer Hoerauf administered the *Miranda* warnings because the prior questions were focused on public safety, but the questions asked after *Miranda* warnings had been provided sought more details from defendant about what happened. There was an intervening break between the two sets of questions because defendant was escorted from the backyard to the front of the house, and he was sitting handcuffed on the curb when questioned by Officer Hoerauf. Although Officer Hoerauf did not caution defendant that his earlier statements made before *Miranda* warnings could not be used against him, "neither did he point out to defendant *** that defendant had already made incriminating disclosures." *Id.* at 486. We acknowledge that defendant was in compelling circumstances, but Officer Hoerauf did not subject defendant to additional coercion; instead, his tone was conversational and cordial. After considering the *Vondehn* factors, and the totality of the circumstances, we agree with the trial court that the belated *Miranda* warnings were effective, and that defendant knowingly, intelligently, and voluntarily waived his rights. We also conclude

that defendant's statements to Officer Hoerauf were not a product of any earlier *Miranda* violation. *State v. Jarnagin*, 351 Or 703, 717, 277 P3d 535 (2012). Thus, the trial court did not err in denying the motion to suppress defendant's statements to Officer Boliek or to Officer Hoerauf.

*Failure to Timely Disclose a Witness's New Information.* In his second assignment of error, defendant argues that the trial court erred when it permitted a witness, Stark, to testify that defendant had complained at a party about three months before the shooting that the victim had made sexual advances toward defendant's fiancée. In his initial interview with police, Stark recalled that defendant had complained about the victim drinking beer and eating food that did not belong to him. Stark indicated that he did not have any further information. However, about one week before trial, when being subpoenaed to testify, Stark also disclosed that defendant had complained about the victim making a pass at defendant's fiancée.

Defendant moved to exclude Stark's testimony and argued that the state committed a discovery violation by failing to disclose the additional information. The trial court ruled that the new information, even if it could be used to impeach Stark, was not exculpatory and the trial court allowed defendant a brief recess for defense counsel to talk to Stark. In his trial testimony, Stark described how defendant had gone on a "rant" about the victim and defendant complained that the victim made "advancements sexually toward [defendant's fiancée]."

District attorneys must disclose exculpatory or impeachment evidence within their possession or control, and they are required to do so "without delay." ORS 135.815(1)(g), (2)(a)(B). To remedy a discovery violation, a trial court may "grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate." ORS 135.865. Although we review whether the state violated the discovery statutes or the Fourteenth Amendment for errors of law, we review a trial court's remedy for an abuse of discretion. *State v. Pilon*, 321 Or App 460, 466, 516 P3d 1181 (2022).

On appeal, defendant renews his claim that the state violated the discovery statutes and his due process rights by failing to notify him before trial of Stark's new information. We are troubled by the state's failure to disclose it without delay. Although it was not exculpatory, it did tend to impeach Stark's testimony because Stark did not disclose it when first interviewed by police. Nevertheless, the trial court's remedy was appropriate, and the discovery violation was not prejudicial. The trial court granted a short recess to allow defense counsel to talk to Stark. Defendant had an opportunity to impeach Stark during cross-examination, and attempted to do so, but Stark explained that he had failed to remember it earlier. When defendant testified, he acknowledged that he had complained to Stark about the victim making a pass at his fiancée, so it is clear that Stark did not fabricate the information. Defendant testified that the incident bothered him "a little bit but not to the point of being angry over it." Given defendant's testimony, we conclude that any error in allowing Stark to testify about the incident was harmless. *See State v. Orr*, 197 Or App 327, 332-33, 105 P3d 904, *rev den*, 338 Or 680 (2005) (any error in admitting evidence of a prior crime and defendant's response to police questioning about it was harmless because the defendant also provided testimony about it).

*Defendant's Unpreserved Challenges to Closing Arguments.* In his third to tenth assignments of error, defendant argues that the trial court plainly erred in permitting the prosecutor to make improper comments during closing arguments. In a plain-error challenge to purportedly improper arguments to the jury, "the defendant [must] establish that it is obvious and beyond reasonable dispute that the prosecutor's statements were improper." *State v. Perez*, 373 Or 591, 615, 568 P3d 940 (2025). If the defendant does so, the statements provide grounds for reversal only if "the comments rendered the defendant's trial unfair, which * * * requires the defendant to show that any curative instruction by the trial court would not have been effective." *Id.* at 606; *see also State v. Chitwood*, 370 Or 305, 311-12, 518 P3d 903 (2022).

Here, having reviewed the challenged arguments, and considering them in context, they were not obviously

improper, and they did not deprive defendant of a fair trial. The closest one was the prosecutor's statement that defendant's fiancée "inexplicably wasn't brought in to tell you what supposedly happened." Plaintiff contends that the statement was similar to the improper statement in *State v. Wilson*, 342 Or App 625, 631, ___ P3d ___ (2025), in which the prosecutor argued that testimony from a head trauma expert was "shockingly absent." However, here, considered in context, it is not obvious that the challenged statement would have suggested to the jury that defendant had a burden to produce evidence because the reference to defendant's fiancée seems to have been an attempt to explain to the jury why *the state* did not call her as a witness because she had helped defendant to hide the gun. The prosecutor argued,

> "And now [the victim is] in a coffin somewhere or an urn and he can't come in here and tell you what really happened on May 6th. Right?
>
> "There are two people that apparently were—that were close by where this happened. One of them, of course, you've heard from.
>
> "The other one is his fiancée, *who inexplicably wasn't brought in to tell you what supposedly happened.* It makes some sense, because she's apparently somebody who is aiding and abetting and evidence tampering. Right?"

(Emphasis added.) As that context for the statement shows, the state may have been suggesting that it might have been "inexplicable" or surprising to the jury that defendant's fiancée did not testify, and the state may have been further attempting to explain why the state did not call her as a witness. Given that context, the comment was not obviously improper, and it was not so improper that it could not have been cured by a jury instruction if defendant had objected. Having reviewed defendant's other unpreserved challenges to the prosecutor's statements, we reach the same conclusion: considered in context they were not so improper as to have required a mistrial. *See State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023), *rev den*, 374 Or 143 (2025) ("prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial" (emphasis in original)).

*Defendant's Preserved Challenges to Closing Arguments.* In his eleventh and twelfth assignments of error, defendant take issue with the prosecutor's argument that the jury should sit silently in the jury room for seven minutes, "realize how long of a time that is," and, "as you're doing it, imagine just outside the jury room door there's a man laying on the ground with a chest wound who is actively bleeding to death." Defendant objected to the argument and the trial court overruled the objection.

Generally, we review a trial court's decision to over-rule an objection to closing arguments for abuse of discretion. *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). However, we review whether the prosecutor misstated the law during closing arguments for legal error. *State v. Purrier*, 265 Or App 618, 620, 336 P3d 574 (2014).

Here, we conclude the trial court did not abuse its discretion or err in overruling the objection. Although it is generally improper for a prosecutor to make a "golden rule" argument that appeals to the jurors' emotions, *see State v. Muniz*, 332 Or App 56, 60-61, 548 P3d 172, *rev den*, 372 Or 763 (2024), here the prosecutor did not expressly encourage the jury to decide the case on an improper basis. Instead, the record suggests that the prosecutor was attempting to argue to the jurors that they should not find defendant's account of what occurred credible because he waited a long time after shooting his roommate—seven minutes—before he called 9-1-1. Whether or not that argument was effective,[3] it was based on the evidence. *See State v. Sperou*, 365 Or 121, 130, 442 P3d 581 (2019) (explaining that prosecutors "have wide latitude to make *arguments* from the evidence" (emphasis in original)). And it was not so egregious as to have deprived defendant of a fair trial.

*Sentencing.* In his thirteenth assignment of error, defendant argues that the trial court erred in imposing a consecutive sentence on Count 2. A court has discretion to impose consecutive sentences if the criminal offense

---

[3] The jury ultimately acquitted defendant of second-degree murder with a firearm and found him guilty of the lesser-included offense of first-degree man-slaughter with a firearm.

for which a consecutive sentence is contemplated "was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense." ORS 137.123(5)(a); *see also State v. Soto*, 372 Or 561, 578-83, 551 P3d 893 (2024) (construing the consecutive sentencing statute).

Here, the state concedes that a consecutive sentence on Count 2—UUW with a firearm—was not authorized because that offense was incidental to the more serious offense of first-degree manslaughter with a firearm. Reviewing how the state charged the offenses and the jury's findings, we agree with that concession. Because we must remand for resentencing, we do not need to address defendant's fourteenth assignment of error which pertains to whether the trial court erred in imposing the "gun minimum" sentence on Count 2 instead of Count 1. That issue is not likely to arise on remand because the trial court is likely to impose concurrent sentences. *See State v. Parham*, 302 Or App 179, 180, 456 P3d 690 (2020) (explaining that remand for resentencing "obviates the need to address [the] defendant's remaining claims of sentencing errors because the issues they concern may not arise on remand").

Remanded for resentencing; otherwise affirmed.